**Robert R. DOELLE, Plaintiff and Appellant,**

v.

**Ruth Taylor BRADLEY and Guy Pace, Mark Pace, Phillip G. Pace, Richard L. Pace, Steve Bearnson, Barbara C. Pace, Charlotte A. Pace, Jessie Pace, Michelle B. Bearnson and Rebecca Pace, dba Boulder Mountain Land & Cattle Company, and Does I through X, Defendants and Appellees.**

**Nos. 860305, 860633.**

Supreme Court of Utah.

Dec. 27, 1989.

---

Willard R. Bishop, Cedar City, for plaintiff and appellant.

Tex R. Olsen, Richfield, Gretta Spendlove, Salt Lake City, Gerald N. Hill, Sonoma, Cal., for defendants and appellees.

ZIMMERMAN, Justice:

Plaintiff Robert R. Doelle ("Robert") appeals from a judgment distributing the estate of his mother, Myrtle Woodbury Doelle ("Myrtle"). The district court ruled that 75 percent of the proceeds from the sale of the real property that comprised the residue of Myrtle's estate was to be distributed to Robert and 25 percent was to go to his sister, Ruth Taylor Bradley ("Ruth"). Robert raises a number of arguments which, reduced to their essentials, amount to claims that (i) the trial court's determination is not supported by the evidence, (ii) the trial court erred in granting Ruth a portion of the estate because she violated a "no contest" provision in Myrtle's will, and (iii) the trial court erred in failing to recognize that Robert had gained title to the ranch by adverse possession. We affirm.

We state the facts in a light most favorable to the trial court findings. *See Branam v. Provo School Dist.,* 780 P.2d 810, 810 (Utah 1989). Myrtle died in California in June of 1981. She was survived by two children, Robert and Ruth, and grandchildren not involved in this dispute. Myrtle was domiciled in California at the time of her death, and proceedings to probate her will were initiated in that state. The will directed, *inter alia,* that cash gifts be made to various grandchildren, that a house and the lot upon which it rested in Wayne County, Utah, be given to Robert, and that the residue of the estate, which consisted of property in Wayne County, go to Ruth. The house and lot that the will left to Robert are known as the Torrey home, and the property that comprised the

residue of Myrtle's estate is known as the Happy Valley Ranch ("the ranch").

The California court determined that Myrtle had a life estate in the Torrey home and that, according to a 1966 agreement, the title to the home was to be held in trust for Robert and Ruth. Therefore, it held that the attempted devise of this property to Robert alone failed and that Robert and Ruth owned it as tenants-in-common. The California court next determined that the ranch passed to Ruth by virtue of the will's residuary clause. The title to this property was still in the name of a defunct family corporation initially formed by Myrtle and her husband in 1958. However, the California court reasoned that because the property had been deeded to the corporation by Myrtle's late husband, equitable title to it vested in Myrtle.

Shortly after the entry of the California decree, Ruth had the decree filed and recorded in Wayne County, Utah. She also commenced ancillary proceedings in the district court in Wayne County. The court entered an estate closing order on February 9, 1983, that conveyed title to the ranch to Ruth. Ruth subsequently sold the ranch to a party not involved in this aspect of the appeal. Robert was not in the United States at the time and did not participate in either the California probate proceedings or the Utah ancillary proceedings.

In August of 1984, Robert filed suit against Ruth in the Utah district court. He sought to have title to the ranch quieted in him and damages. The case was tried by the court. After taking evidence, the court entered findings and conclusions. It found that the California probate decree was not entitled to full faith and credit in Utah because proper notice of the California proceedings was not given to all concerned. It thus proceeded to consider Robert's claims. The court found, *inter alia,* that Myrtle owned 25 percent of the family corporation's shares at the time of her death and Robert owned the remaining 75 percent. It concluded that since Ruth was to receive the residue of Myrtle's estate, she was entitled to 25 percent of the proceeds from the sale of the ranch, as it was

property of the corporation, and that Robert was entitled to 75 percent of the proceeds. Robert appeals, seeking all of the proceeds.

Robert raises a number of challenges to the trial court's ruling that can be fairly characterized as claims that the trial court failed to adequately consider all the evidence pertaining to the status of the Doelle family corporation and the transactions affecting it. As a result, Robert contends, the court reached a number of factually erroneous conclusions which then formed the foundation for its ruling giving Ruth a part of Myrtle's estate. Although not so characterized, this aspect of Robert's attack on the trial court's ruling amounts to a challenge to the findings of fact.

■ To successfully attack findings of fact, an appellant must first marshal all the evidence supporting the findings and then demonstrate that, even if viewed in the light most favorable to the trial court, the evidence is legally insufficient to support the findings. *Reid v. Mutual of Omaha Ins. Co.,* 776 P.2d 896, 899 (Utah 1989); *In re Estate of Bartell,* 776 P.2d 885, 886 (Utah 1989); *Scharf v. BMG Corp.,* 700 P.2d 1068, 1070 (Utah 1985). And the legal sufficiency of the evidence is determined under civil procedure rule 52(a), which provides: "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Utah R.Civ.P. 52(a). A trial court's factual finding is deemed "clearly erroneous" only if it is against the clear weight of the evidence. *Reid,* 776 P.2d at 899–900; *Bartell,* 776 P.2d at 886; *see Western Kane County Special Serv. Dist. No. 1 v. Jackson Cattle Co.,* 744 P.2d 1376, 1377 (Utah 1987).

■ In the present case, Robert has not attempted to marshal the evidence in support of the trial court's findings and demonstrate that the evidence supporting the findings is legally insufficient. His brief presents the conflicting evidence in a light most favorable to his position and largely ignores the contrary evidence. Therefore,

there is no reason for us to disturb the trial court's findings. *See Ashton v. Ashton*, 733 P.2d 147, 150 (Utah 1987). In any event, it appears that the challenged findings are not clearly erroneous.

A distinct prong of Robert's attack on the judgment is his claim that the trial court erred by finding that Ruth is entitled to take under the residuary clause despite the fact that she had violated the will's "no contest" provision. The provision in question states:

> If any beneficiary under this Will in any manner, directly or indirectly, contests or attacks this Will or any of its provisions, any share or interest in my estate given to that contesting beneficiary under this Will is revoked and shall be disposed of in the same manner provided herein as if that contesting beneficiary had predeceased me without issue.

In 1981, Ruth filed a document entitled "Creditor's Claim" with the administrator of Myrtle's estate in the California probate proceeding. In that document, Ruth asserted that although the will purported to pass to Robert clear title to the Torrey home, in fact, she had a present interest in the property. Ruth eventually withdrew this claim. However, Robert contends that she did so only after language was added to the estate closing order passing title to the residue of Myrtle's estate to her. Robert argues first that the mere filing of this creditor's claim constituted a violation of the no contest clause. Alternatively, he argues that even if we should determine, as have other jurisdictions, that a no contest provision may be ignored if the challenging party acts in good faith, Ruth did not act in good faith when she asserted her creditor's claim. *See* Utah Code Ann. § 75–3–905 (1978). Because we find that Ruth did not violate the no contest provision in Myrtle's will, we find it unnecessary to reach Robert's alternative argument.

■ The substance of Robert's claim is a challenge to the trial court's implicit legal conclusion that Ruth was not barred from receiving the residue of Myrtle's estate by the filing of the creditor's claim. A trial court's statements or conclusions of law are accorded no particular deference; we review them for correctness. *See, e.g., Cottam v. Heppner*, 777 P.2d 468, 471 (Utah 1989); *Utah State Coalition of Senior Citizens v. Utah Power & Light Co.*, 776 P.2d 632, 634 (Utah 1989).

■ In general, a will contest occurs when a party claims that the will is invalid. Grounds for such a contest may include lack of testator capacity, fraud, undue influence, improper execution, forgery, or subsequent revocation of the will by a later will. Annotation, *Validity and Enforceability of Provision of Will or Trust Instrument for Forfeiture or Reduction of Share of Contesting Beneficiary*, 23 A.L. R.4th 369, 373 (1983). Because a creditor's claim does not directly attack a will, courts have held that such a claim is not a will contest. *See In re Madansky's Estate*, 29 Cal.App.2d 685, 85 P.2d 576 (1938); *Wright v. Cummings*, 108 Kan. 667, 196 P. 246 (1921); Annotation, *What Constitutes Contest or Attempt to Defeat Will Within Provision Thereof Forfeiting Share of Contesting Beneficiary*, 49 A.L.R.2d 198, 226 (1956).

The reasoning of the above-mentioned authorities is germane to this dispute. The record on appeal demonstrates that Ruth filed her creditor's claim not to contest the dispositive provisions of the will, but to inform the administrator of Myrtle's estate that she had an interest in the Torrey home which Myrtle had attempted to devise to Robert. Although this could be construed as an "attack" on one of the will's provisions and thereby run afoul of the no contest provision, we think the better approach is the one presumably followed by the trial court—to regard the creditor's claim as a reasonable means to question the basic premise of Myrtle's will, that she owned all she purported to give away.

■ Finally, Robert claims that the trial court erred in failing to recognize that he had gained title to the ranch through adverse possession. This claim deserves little discussion. Robert was the corporation president, and as such, could not adversely possess the corporation and gain title to the real property.

We have considered the rest of Robert's arguments and find them to be without merit.

The district court's judgment is affirmed.

HALL, C.J., and STEWART and DURHAM, JJ., concur.

HOWE, Associate Chief Justice (concurring in the result):

I concur in the result. The most troubling issue raised by appellant is whether the trial court erred in holding that Boulder Mountain Land and Cattle Company was a *bona fide* purchaser of the ranch from Ruth. On or about July 8, 1966, a stockholders' meeting of the Wayne Wonderland Development Association, Inc., was held at which Robert, Ruth, and their mother, Myrtle, were in attendance. The written minutes of the meeting, which were signed by all three of them, reflect that they entered into an agreement whereby Ruth and Myrtle surrendered their shares to the corporation in consideration of conveyance to them of certain tracts of corporate real property. Ruth received two parcels; Myrtle was to receive three parcels, including the Torrey home. She agreed to hold her properties in trust for Robert and Ruth, but with the right to sell them for living expenses, if necessary. These conveyances to Ruth and Myrtle were stated to be "as full and final payment for [their] interest in the corporation." All five properties were particularly described in the minutes, which were recorded in the office of the Wayne County Recorder on July 25, 1967. In the agreement, Robert agreed to "take over the Wayne Wonderland Development Association, Inc. and all remaining assets therein described in the Articles of Incorporation," except for the properties to be conveyed to Myrtle and Ruth.

Following that meeting, Robert became the sole stockholder until 1973, when Myrtle expressed the desire to reconvey the Torrey home to the corporation in exchange for 20,000 shares of stock. (Actually, the Torrey home had never been conveyed out of the corporation so reconveyance was unnecessary.) She was issued the stock, which gave her a 25 percent ownership. Robert then had a 75 percent ownership of the stock.

When Myrtle's estate was administered in California in 1982, the probate court, on the strength of the 1966 stockholders' agreement, held that Myrtle's attempted devise of the Torrey home to Robert failed because she had placed that property in trust for both Ruth and Robert. Thus, the court decreed that Ruth and Robert were entitled to that property as tenants in common. However, the court apparently was not informed that the 1966 agreement gave the ranch to Robert by virtue of his being the sole remaining stockholder, entitled to the remaining corporate assets. In apparent ignorance of this provision, the court decreed that since the corporation was no longer in existence, the ranch, which was still held in the corporate name, belonged to Myrtle's estate since she had equitable title by virtue of the fact that the property had been conveyed to the corporation by her late husband. Being part of Myrtle's estate, the ranch was distributed to Ruth under the residuary clause of Myrtle's will. A copy of the California decree, together with a copy of the decree of distribution entered by the District Court for Wayne County, Utah, which confirmed the distribution of the ranch to Ruth, was recorded in the Wayne County Recorder's office. On the strength of these two decrees, Boulder Mountain Land and Livestock Company purchased the ranch from Ruth. The trial court held that Boulder Mountain was a bona fide purchaser because it had no notice, either actual or constructive, of Robert's interest.

The troubling aspect of this purchase is that the Wayne County land records contained both the California and the Wayne County probate decrees of distribution showing title in Ruth, but also contained the minutes of the 1966 stockholders' agreement whereby it was agreed that "all remaining assets" would remain in the corporation, which would be "taken over" by Robert. The ranch was one of those "remaining assets" but was not specifically referred to or described in the minutes. (The five properties which were conveyed

to Ruth and Myrtle were particularly described in the agreement.)

With this state of the record, was constructive notice given of Robert's interest in the ranch by the recording of the minutes? There is no doubt that had the minutes contained a legal description of the ranch, there would have been constructive notice of Robert's interest. However, without the legal description, it is likely that the minutes could not be indexed in the recorder's office as pertaining to the ranch property. The trial record before us is silent on this point, and I must presume that it was because of the absence of the legal description that the trial court impliedly found that the recording of the minutes did not give to Boulder Mountain constructive notice of Robert's interest.