Anthony W. RUDMAN, Plaintiff, Appellee, and Cross–Appellant,

v.

Evelyn W. RUDMAN, Defendant, Appellant, and Cross–Appellee.

Nos. 890475–CA, 890495–CA.

Court of Appeals of Utah.

May 22, 1991.

Clark W. Sessions (argued), Dean C. Andreasen, Salt Lake City, for Evelyn W. Rudman.

Paul H. Liapis (argued), Helen E. Christian, Kim M. Luhn, Gustin, Green, Stegall & Liapis, Salt Lake City, for Anthony W. Rudman.

## OPINION

Before BILLINGS, GARFF and ORME, JJ.

GARFF, Judge:

Evelyn Rudman and Anthony Rudman each appeal from a decree of divorce issued July 3, 1989.

## FACTS

We recite the facts in the light most favorable to the trial court findings. *Doelle v. Bradley,* 784 P.2d 1176, 1177

(Utah 1989). The Rudmans were married on April 18, 1981. Both parties had previously been married and divorced. At the time of the marriage, Mrs. Rudman had been receiving $1,100 per month in permanent alimony from her former husband. Part of Mr. Rudman's premarital property included several movie theaters in three states, two condominiums, and a cabin.

Prior to the marriage, Mrs. Rudman's counsel prepared a prenuptial agreement, which the parties signed on April 15, 1981. The agreement stated that each party relinquished all claims and interest to property the other had acquired prior to the marriage and that such property could not be deemed a marital asset following the marriage. The agreement was "not intended and does not apply to any property which is accumulated by the parties either individually or jointly following the marriage of the parties."

Mrs. Rudman's alimony from her former marriage terminated upon her marriage to Mr. Rudman. During the marriage, Mr. Rudman made some loans to the business entities operating the various theaters. These loans became due during the marriage.

After six years of marriage, Mr. Rudman filed for divorce on April 28, 1987, and Mrs. Rudman counterclaimed. Mr. Rudman was ordered to pay temporary alimony. By the time of trial, he had paid $34,500 in temporary support, at a rate of $1,500 per month.

At the beginning of the trial on August 18, 1988, the parties conceded that the prenuptial agreement was entered into voluntarily, without duress or fraud, and that it was clear and unambiguous and could be interpreted as a matter of law. The trial court, at the request of the parties, interpreted the agreement. Based on the court's interpretation of the prenuptial agreement, both parties moved for a continuance.

As to the substance of the agreement, the trial court issued a clarifying ruling regarding the agreement on August 22, 1988, stating that the agreement provided that property acquired by either party before marriage, including any interest or increase in value, would remain that party's property. The court also found that the agreement provided that any property acquired after the marriage, either jointly or individually, would be deemed marital property, less any amount utilized for its acquisition that could be traced to a point prior to the marriage.

After several continuances, the trial resumed in April of 1989. The court issued its memorandum decision on April 28, 1989. Mr. Rudman's counsel submitted proposed findings of fact and conclusions of law and decree of divorce, to which Mrs. Rudman filed an objection. Denying the modifications requested by Mrs. Rudman, the trial court entered its findings of fact and conclusions of law and decree of divorce on July 3, 1989.

The findings regarding alimony state that Mrs. Rudman lost $1,100 per month in alimony by virtue of her marriage to Mr. Rudman and that it was therefore "reasonable and just" that temporary alimony of $1,100 per month be paid to her until she reaches the age of sixty-five, at which age she would begin to receive social security benefits.

Concerning Mrs. Rudman's need for alimony, costs, and attorney fees, the court made the following finding:

> The court finds that the Defendant was employed as an insurance agent and subsequently was self-employed in owning an answering service, which she sold in 1976 for $80,000.00. The Court finds that during her first marriage, she was employed, and that during this marriage, she has operated two separate businesses and is presently self-employed in the third. The Court find[s] that the Defendant resides in Salt Lake City, but has purchased a second home in Logan, which she visits periodically. The Court finds Defendant is a very pleasant and dignified-appearing woman, and based upon her history, there is no reason why she should not continue to work. The Court finds she has the means to provide for her own reasonable attorney fees and costs in this matter.

Mrs. Rudman's attorney fees were in excess of $38,000 and were voluntarily decreased by counsel to $28,000. Her expert fees were also extensive, the fee of one expert CPA alone was $27,500. As to these fees, the court noted that it was "concerned about the fees and cost incurred," but found no need to rule upon the reasonableness of such.

The court found that Mr. Rudman's premarital assets were not commingled with marital property, and that he maintained them as separate entities, including those that were improved through expansion or remodeling. Thus, under the parties' prenuptial agreement, the loan receivables were properly characterized as premarital assets, as were the condominiums and the cabin.

Both parties appealed. The issues on appeal concern alimony, attorney and expert fees, and property distribution and valuation.

## ALIMONY

■ Both parties contend that the court abused its discretion in its alimony award. Mrs. Rudman claims the trial court abused its discretion by failing to make adequate findings as to her financial need and ability to support herself. She contends that, had the trial court made the appropriate findings, it would have awarded her permanent alimony in the amount of $2,853 per month, less any amount it determined she could generate from employment.

On the other hand, Mr. Rudman argues that the evidence clearly established Mrs. Rudman's lack of need, and her ability to produce sufficient income to meet her needs. He contends that, given the short duration of the marriage and the amount paid in temporary support, the trial court abused its discretion in awarding any alimony at all.

■ The purposes of an alimony award include enabling the receiving spouse to maintain, as nearly as possible, the standard of living enjoyed during the marriage, and preventing the receiving spouse from becoming a public charge. *Munns v. Munns*, 790 P.2d 116, 121 (Utah Ct.App.1990). In determining alimony, a trial court must consider three factors: (1) the financial condition and needs of the receiving spouse, (2) the ability of the receiving spouse to produce sufficient income for him- or herself, and (3) the ability of the responding spouse to provide support. *Noble v. Noble*, 761 P.2d 1369, 1372 (Utah 1988); *Haumont v. Haumont*, 793 P.2d 421, 423 (Utah Ct.App.1990); *Munns*, 790 P.2d at 121.

■ So long as these three factors are considered, we will disturb a trial court's decision concerning alimony only upon a showing "that such a serious inequity has resulted as to manifest a clear abuse of discretion." *Haumont*, 793 P.2d at 424. We emphasize once again that, in considering these factors, the trial court must make adequate factual findings on all material issues unless the facts in the record are "clear, uncontroverted, and capable of supporting only a finding in favor of the judgment." *Id.* (citations omitted).[1]

1. A footnote in a recent Utah Supreme Court case suggests that, where there are no findings, or where the findings are inadequate, the general rule requires us to affirm whenever it would be reasonable to find facts to support a given conclusion. *State v. Ramirez*, 159 Utah Adv. Rep. 7, 16 n. 6, —— P.2d ——, —— n. 6 (1991) (citing *Mower v. McCarthy*, 122 Utah 1, 245 P.2d 224, 226 (1952)). In *Ramirez*, the court said, "the general rule is best and most inclusively stated as it was set forth in *Mower*: this court upholds the trial court even if it failed to make findings on the record whenever it would be reasonable to assume that the court actually made such findings." —— P.2d at —— n. 6.

We note, however, that in *Mower* the appeal was from an interlocutory order granting a motion for discovery, wherein defendant was ordered to produce a transcript of testimony obtained during the investigatory stage of a railroad accident. The *Mower* court emphasized that "findings of fact are not required for a review of a decision on a motion involving issues of fact which does not constitute a final judgment." 245 P.2d at 226. The court in *Mower* further qualified its decision by pointing out that "[a]ll of the facts herein stated could reasonably have been found from the evidence. There is very little conflict in the evidence." *Id.* at 227.

Thus, in a case such as presently concerns us, a final order in a divorce action, where there is a five-volume record, over one hundred exhibits, and where the evidence is severely conflict-

■ The only finding pertaining to alimony states that Mrs. Rudman lost $1,100 per month in alimony by virtue of her marriage to Mr. Rudman and that it was therefore "reasonable and just" that temporary alimony be paid to her until she reaches the age of sixty-five, when she will begin to receive social security benefits. This is error in that the amount of alimony lost upon remarriage is irrelevant unless it somehow figures into the three factors. *Haumont,* 793 P.2d at 424. The second error of law is that any future social security award is too speculative, absent a specific finding as to the date and the amount of the future award.

No findings were made regarding Mrs. Rudman's financial condition and needs, her present ability to produce sufficient income to provide for herself, or Mr. Rudman's ability to provide support, nor the amount of any future social security award or other justification for automatically terminating alimony at age sixty-five.

Because the court erred as a matter of law, we reverse the alimony award and remand for adequate findings on the requisite factors.

### FEES

■ Mrs. Rudman claims the court abused its discretion in refusing to award her attorney fees and expert witness fees.

■ The decision to award fees rests within the sound discretion of the trial court, but, as with alimony awards, the decision must be based on evidence of financial need and reasonableness. *Huck v.*

*Huck,* 734 P.2d 417, 419 (Utah 1986); *Morgan v. Morgan,* 795 P.2d 684, 687–88 (Utah Ct.App.1990); *Rasband v. Rasband,* 752 P.2d 1331, 1336 (Utah Ct.App.1988). We will reverse an award of attorney fees and costs when either financial need or reasonableness has not been shown. *Haumont v. Haumont,* 793 P.2d 421, 426 (Utah Ct.App. 1990); *Munns v. Munns,* 790 P.2d 116, 122 (Utah Ct.App.1990).

In the present case, only one very general finding addressed financial need, which we quoted at length in the fact section. The finding regarding reasonableness of the fees was even more general. There, the court stated that it was "concerned about the fees and cost incurred," but went on to find no need to rule upon the reasonableness of such, presumably because it was not going to award fees anyway.

Again, the record contains substantial evidence regarding the parties' financial situation and the reasonableness of the fees. However, the findings are deficient because they fail to evaluate these factors. Moreover, our remand of the alimony issue may have an impact on the award of fees. We therefore remand the issue of fees for specific findings regarding the financial needs of Mrs. Rudman. In the event the court on remand determines that need exists, the court should then make findings as to the reasonableness of both the expert and the attorney fees.

### PRENUPTIAL AGREEMENT

■ Mrs. Rudman contends the trial court erred in interpreting the prenuptial agreement. She argues that the agree-

---

ed, it is essential that the reviewing court clearly understand the findings on which the trial court bases its conclusions. We note that Utah R.Civ.P. 52(a) is consistent with *Mower* when it states that the trial court need not enter findings or conclusions in rulings on motions, with certain exceptions. Also, Rule 52(c) permits findings and conclusions to be waived under specific circumstances *except* in divorce actions, lending further support for the requirement that findings must be made by the trial court in a divorce action.

One further note: if we were to infer findings where there are none, as suggested by *Ramirez,* it would be only reasonable to place the burden on the one challenging the implied findings and

the resulting conclusion to marshal the evidence in support of such findings and to show how the evidence, viewed in the light most favorable to the trial court, is nevertheless insufficient to support the implied findings. *Doelle v. Bradley,* 784 P.2d 1176, 1178 (Utah 1989). Without this requirement, the burden on the appellate courts to cull through volumes of transcripts and exhibits in search of evidence supporting the implied findings would be prohibitive. It would also place the reviewing court in the untenable position of second guessing the trial court's reasons for finding as it did without the advantage of observing witnesses first hand and assessing their credibility.

ment specifies that any interest and appreciation accruing to premarital property after the marriage becomes marital property. Mrs. Rudman also claims the court abused its discretion in failing to find that she contributed labor and/or assets to his premarital property, thus converting it to marital property. Specifically, she claims the court abused its discretion by failing to find that she assisted Mr. Rudman in the operation of his business by helping to "remodel, clean, vacuum, paint, run errands, make and hang drapes, purchase and prepare food ... and work as a ticket taker," thus converting those businesses to marital property. She claims the court abused its discretion in failing to find that she improved and furnished the condominiums and the cabin, resulting in those properties becoming commingled into the marital estate. She also claims the court abused its discretion in finding that loans made to various business entities operating Mr. Rudman's theaters were due to Mr. Rudman alone, rather than to the marital estate. Mrs. Rudman claims that improper exclusion and improper valuation of this property reduced the marital estate by $472,589.

Finally, Mrs. Rudman claims that the court abused its discretion by undervaluing property properly classified as marital. Specifically, she claims the St. George theaters, the two new screens in Logan, and the Jeep Wagoneer were undervalued by the trial court.

The parties agreed that the prenuptial agreement was clear and unambiguous and could therefore be interpreted as a matter of law. Premarital agreements are construed in the same manner as other contracts. *Neilson v. Neilson*, 780 P.2d 1264, 1267 (Utah Ct.App.1989). Because the trial court interpreted the agreement as a matter of law, we accord the interpretation no particular weight, and review using a correctness standard. *Id.*

The prenuptial agreement spells out which property should be classified as marital and which should be classified as premarital. Once that has been determined, the court has discretion as to how to divide the marital property between the parties. *Haumont v. Haumont*, 793 P.2d 421, 424 (Utah Ct.App.1990); *Munns v. Munns*, 790 P.2d 116, 118 (Utah Ct.App.1990) (failure of the court to accept one party's proposed valuation of property is not an abuse of discretion).

The court found that a fair reading of the agreement clearly separated premarital property from property accumulated after the marriage. The court also found that, under the agreement, any premarital property, together with any interest or increase, would remain the property of the owner, and any property acquired after the marriage would be marital, "less that amount utilized for its acquisition that can be traced to a point prior to the marriage."

We find no error in the trial court's legal interpretation of the document. Under the terms of the prenuptial agreement, where each party relinquished all rights to previously acquired property of the other party, he or she would also have no right to any increase in value or additional earnings that might accrue to that property. Likewise, any property acquired by the parties after the marriage would accrue earnings into the marital estate. Additionally, if any amounts used to acquire property during the marriage could be traced to premarital property, those amounts would remain the separate property of that individual. Thus, to preserve the premarital integrity of an asset that has been arguably commingled with property acquired after the marriage, that asset, or its severable part, must be traced to its original source.

In considering the claims regarding the specific findings, we note that each side presented extensive expert testimony concerning the financial situation of the parties and his or her individual theories as to the correct categorization, valuation, and distribution of the property. This extensive testimony resulted in a five-volume transcript and over one hundred exhibits. Most of the record relates specifically to property distribution and valuation. Further, the trial court heard substantial evidence upon which to base its property distribution. The court made clear and de-

tailed findings as to categorization, valuation and distribution of property.

On appeal, the burden is on the appellant to marshal all the evidence supporting the trial court's findings and then to show the evidence to be legally insufficient to support the findings, even when viewed in the light most favorable to the trial court. *Doelle v. Bradley*, 784 P.2d 1176, 1178 (Utah 1989). In reviewing the marshaled evidence, our standard of review requires us to defer to the trial court's judgment and not to disturb it so long as we find that the court has exercised its discretion in accordance with the standards set by this state's appellate courts. *Haumont*, 793 P.2d at 424.

With an extensive record and thorough findings before us, we are reluctant to set aside the findings absent clear error. On appeal, Mrs. Rudman has failed to adequately marshal the evidence to demonstrate insufficient support for the trial court's findings regarding the property distribution and valuation. We therefore find the distribution and valuation to be within the trial court's discretion and we will not disturb its judgment in this regard.

### CONCLUSION

In conclusion, we reverse and remand for adequate findings on the issues of alimony and fees, and we affirm the trial court's order concerning property distribution and valuation.

BILLINGS, J., concur.

ORME, Judge (concurring in the result in part):

While I otherwise concur in the court's decision, I see the attorney and expert fee issue differently.

In my view, the court clearly and adequately found Mrs. Rudman was not in need of help with her attorney and expert fees. In this regard, the court noted not only her ability to continue working and her considerable success in business, typified by the $80,000 she received upon the sale of one of her businesses, but also that she had the wherewithal to afford the luxury of a second residence. Substantial evidence supports these findings. Given those findings, I see no error in the conclusion that someone of such means was not in need of help with her professional fees. Moreover, where there is an adequate finding of no need, I cannot see that any point would be served in requiring findings as to the reasonableness of fees, a matter that is of concern to the court only if the court has first determined that an award of fees should be made.

Nonetheless, I agree remand to reconsider the fee issue is proper in one respect. The trial court in this case determined Mrs. Rudman could bear her own fees, but it did so in contemplation of her receiving, inter alia, alimony of over $1,000 per month for several years. We have disturbed that award on appeal. If upon remand and consideration of the proper factors relative to alimony the court determines to award no alimony or less alimony, its view of Mrs. Rudman's need for help with her attorney and expert fees may necessarily change. Thus, I would permit reconsideration of the fee question if the court on remand awards less alimony than before. Conversely, if it awards the same or greater alimony, its finding of no need for assistance with fees should stand and should not have to be revisited.

I wish also to add a comment about the *Ramirez* decision, treated at length in footnote 1 of the main opinion. Where the evidence does not compel a particular finding of fact, but would permit one or more inconsistent findings, I see real difficulty with an appellate court assuming the trial court must necessarily have found the facts in the way which is most consistent with the trial court's judgment. Such an approach would subvert our error-correction function. If we start with the judgment and work backwards, we may well see a version of the facts which is consistent with the judgment as entered. However, a mistake of law would go undetected if the trial court, in evaluating the credibility of the witnesses who appeared before it, had actually determined the facts to be

otherwise, but had erred in applying the law to those facts.

A simple example will highlight the difficulty. Suppose in a case turning on the application of the doctrine of estoppel that a trial court explicitly found facts establishing all requirements of that doctrine except detrimental reliance, as to which the findings were silent. In its conclusions of law, the court found estoppel to apply. Further assume the evidence was in conflict as to whether there had been any detrimental reliance. Under *Ramirez*, the appellate court is empowered to infer that the court actually found the facts as establishing reliance, since that would be consistent with the court's judgment. But what if the court actually found, in weighing the evidence, that no detrimental reliance was occasioned by a particular course of conduct, but failed to say so in its findings because it incorrectly determined that reliance was no longer a necessary requirement under Utah law to establish the estoppel doctrine?

I think a safer course is steered by rather strict adherence to the requirement that adequate findings be made by the *trial* court, where required under Utah R.Civ.P. 52, with the only exception being where the failure to make findings is harmless, i.e., where "the facts in the record are 'clear, uncontroverted, and capable of supporting *only* findings in favor of the judgment.' " *Acton v. Deliran,* 737 P.2d 996, 999 (Utah 1987) (emphasis added) (quoting *Kinkella v. Baugh,* 660 P.2d 233, 236 (Utah 1983)).