**2018 UT App 19**

# THE UTAH COURT OF APPEALS

LYNESSA MICHELLE ANDERSON,
Appellee,
*v.*
LOREN PRICE ANDERSON,
Appellant.

Opinion
No. 20160507-CA
Filed February 1, 2018

Fourth District Court, Provo Department
The Honorable Samuel D. McVey
No. 084400367

Rosemond G. Blakelock, Attorney for Appellant

Jill L. Coil and Luke A. Shaw, Attorneys for Appellee

JUDGE KATE A. TOOMEY authored this Opinion, in which JUDGES
MICHELE M. CHRISTIANSEN and JILL M. POHLMAN concurred.

TOOMEY, Judge:

¶1 Following a bench trial for Loren Price Anderson's petition to modify child support and alimony, the district court awarded Lynessa Michelle Anderson $1,900 per month for alimony, $714.64 for child support, and $16,403.44 in attorney fees. Loren[1] appeals these awards, contending the district court abused its discretion by (1) imputing income to him in the amount of $6,662 per month; (2) awarding Lynessa alimony in excess of her actual needs; (3) awarding child support to Lynessa

---

1. "As is our practice in cases where both parties share a last name, we refer to the parties by their first name with no disrespect intended by the apparent informality." *Smith v. Smith*, 2017 UT App 40, ¶ 2 n.1, 392 P.3d 985.

based on the improperly imputed income; and (4) awarding Lynessa attorney fees without "appropriate consideration of the relevant attorney fees factors."

¶2      We agree with Loren that the court abused its discretion in awarding Lynessa alimony in the amount of $1,900 per month, but only to the extent that it erroneously considered retirement fund contributions in Lynessa's monthly expenses, because they were not enjoyed during the marriage, and we remand solely for removal of that amount from the alimony award. But we conclude there was no abuse of discretion when the district court included anticipated car loan payments and health insurance in Lynessa's monthly expenses, because alimony need not be based solely on current expenses.

¶3      We decline to address Loren's claims of error with respect to his imputed income and the award of child support based on his imputed income because he failed to support his argument with reasoned analysis using legal precedent.

¶4      Finally, the district court did not abuse its discretion in awarding attorney fees to Lynessa based on her need and Loren's ability to pay them.


BACKGROUND

¶5      Loren and Lynessa were married from 1989 to 2008. During their marriage, Lynessa stayed home to raise their four children while Loren worked as a contractor installing carpet and countertops. According to Lynessa, during the marriage Loren was "a workaholic," "always looking for the next job," and was a great provider for the family. Indeed, there was money for extras: two of their sons, Tyler and Steele, were on hockey teams that traveled for games, which could cost more than $7,000 in fees and other expenses per year, which the family was able to pay. Loren also "sometimes [paid] for other kids'

hockey tuition fees because their families couldn't afford it themselves." Tyler recounted that while his parents were married, "we never went without. . . . We had everything we needed."

¶6 After working for different companies for a few years early on in the marriage, Loren started his own contracting business. He primarily submitted subcontracting bids to Action Target, a construction company that provided installations for military, law enforcement, and commercial gun ranges. The money he earned was deposited into a checking account separate from Lynessa's checking account, and whenever Lynessa needed to pay bills or required funds for the children, Loren gave her cash. Lynessa was never privy to what Loren earned for each project and was rarely made aware of the identity of the contractor. But Tyler, Steele, and Lynessa each observed Loren carrying a great deal of cash. After a project's completion, Loren paid cash to his workers.

¶7 In 2006, the Andersons' marriage started to break down. Loren admitted he was "having some troubles at that time" and began using drugs. By Lynessa's account, Loren was no longer "in his right mind set" and he became "very promiscuous" and she "didn't want him around anymore." Loren's drug use rendered him incapable of earning an income for a time and it ultimately led to their divorce.

¶8 In 2008, the district court entered a default decree of divorce after Loren failed to respond to Lynessa's petition. Because Loren did not respond and failed to assist the court with financial documents, the court relied on his 1099 Form from 2007 showing an annual income of $219,246 "or $18,271 per month" to determine his ability to pay child support and alimony. The court imputed income to Lynessa in the amount of $1,014 per month. Ultimately, Loren was ordered to pay $2,945 per month for child support and $2,719 per month for alimony. The child

support obligation was to be reduced as each child reached the age of eighteen, and the alimony obligation was to continue for a period equal to the length of the marriage.

¶9     Beginning around the time of the divorce, Loren pleaded guilty to drug and fraud related crimes and was in and out of jail for three years. Though he was obligated to pay Lynessa a total of $5,664 each month for alimony and child support, he rarely paid and never in the full amount. When he did pay, it was always in cash, until the Office of Recovery Services (ORS) became involved. Lynessa testified, "We would go long periods of time without anything from [Loren]. For the longest time he was paying 200 a month, and he just recently changed it to paying [550]." Even after ORS became involved, Lynessa received only $600 per month for combined child support and alimony. This required Lynessa to receive financial assistance from her church, friends, and family. She also sold some of her gold, jewelry, and other items to provide for herself and the children. But even with this help, she was always behind on bills, and neither she nor the children lived a lifestyle similar to what they enjoyed during the marriage. Tyler testified that their living conditions changed after the divorce, that Lynessa could not fix things around the house, that they relied on their church for food, and that without the money for alimony or child support, Lynessa worked as often as she could "even if it meant not seeing [the children] as often."

¶10     In 2011, Loren filed a petition to modify child support and alimony (the Petition) based on a substantial change in circumstances that resulted in a decrease in income from the time the divorce decree was entered. He alleged that he could not afford to pay child support or alimony because the amount he was ordered to pay was "in excess of [his] income." Loren claimed he had no income during his incarceration and a decreased ability to earn an income similar to what he had

earned during the marriage because he could no longer maintain his own construction business.

¶11 Lynessa and Loren each filed financial declarations and other documents related to their respective incomes and expenses. Lynessa provided her 2014 tax return and pay stubs from 2015, which supported her net monthly income of $2,572.01 as purported in her financial declaration, and claimed monthly expenses in the amount of $5,496.21. Loren provided incomplete tax returns for the years he had actually filed them and monthly pay stubs from one employer with hourly rates that varied from about $20 per hour to $33 per hour. But Loren claimed he was earning only $11 per hour, or $2000 per month.

¶12 The district court held a bench trial in 2015 to resolve the issues Loren raised in the Petition. At trial, most of the testimony related to Loren's ability to earn income, whether he was actually earning only $2,000 per month, and whether he or his new wife (New Wife) owned a construction company.

¶13 Around the time Loren filed the Petition, he had initiated a romantic relationship with New Wife and helped her to register a construction company, Steelcoat. New Wife had never owned a business before, let alone a construction company, and both New Wife and Loren admitted that she relied on Loren to operate Steelcoat. Loren claimed he was only an employee of Steelcoat and made just $11 per hour, or $2,000 per month, but also admitted at trial that he was the "face [of Steelcoat] to a lot of people at Action Target"—the construction company that subcontracts most of Steelcoat's work and with which Loren has had a long professional relationship.

¶14 Loren's claimed income and whether New Wife was indeed the sole proprietor of Steelcoat were called into question when New Wife admitted that Loren helped create all of the bids Steelcoat sent to different companies and that she was not sure whether the bids needed to be signed before submission. In

addition, a representative from Action Target testified that submitting bids is "pretty specific" and "detailed" work that requires a bidder to have "at least done some [installation] work before, or be guided in what it takes to do it." The representative also testified that Action Target works closely with its subcontractors during projects and that when it accepts Steelcoat's bids the company communicates with Loren and not with New Wife. Further, Loren admitted that Action Target has hired him, personally, to complete certain of its projects, but he did not provide any information related to the payments he received for those projects.

¶15   In addition to Loren's failure to provide the court with a complete tax return, other than a 2004 tax return, to support his claimed monthly income of $2,000 per month, Lynessa's attorney elicited testimony from Steele that further negated Loren's claim about his income. Steele testified that when he asked Loren for financial help for hockey fees just before the trial, Loren responded that if Lynessa "would stop coming after him [for] money" that "it would be easier for him to not have to hide what he's doing." And when the court asked about his ability to earn a better income, Loren admitted he had not applied for employment that would pay more than $11 per hour "in the last three or four years" prior to the trial.

¶16   After trial, the district court entered findings of fact and conclusions of law. It found that there had been a "material and substantial change in circumstance" with respect to the incomes of both parties that allowed for modification of the divorce decree. Because Loren failed to provide complete financial documents or tax returns, the court had to determine an appropriate amount of income to impute to him. It found incredible the testimony regarding Loren's income and New Wife's sole ownership of Steelcoat. Loren admitted that Action Target employed him personally for specific projects, yet provided the court with no documentation to show what he was

paid or invoice records "from his prior relationship with Action Target" to give the court a general idea of the income Loren was making and could continue to make. The court also found that Steele's testimony that Loren was "hid[ing] things" from Lynessa was a "refer[ence] to unreported income." The court therefore relied on Loren's 2004 tax return, which represented a period when Loren owned and operated a company similar to Steelcoat, to impute income to him. In 2004, Loren's adjusted gross income was $41,317. The court added $20,000 to this amount based on what Loren paid for his sons' hockey expenses and his ability to pay for other team members' fees. The court also considered inflation rates and ultimately imputed income to him in the amount of $79,948 annually, or $6,662 monthly.

¶17 When determining the amount of alimony to award Lynessa, the court addressed her claimed monthly expenses. These amounted to $5,496.21, but the court removed "the amount spent on adult children, school fees which can be waived[,] and pet care" and found that her reasonable monthly expenses were $4,400. Based on these expenses and her monthly income of $2,513, the court awarded $1,900 per month for alimony. This amount was to be applied retroactively, subsuming the original $2,954 monthly award, starting from the time the divorce decree was entered and lasting for a period equal to the length of the marriage. The court also reduced the award of child support to $714.64 per month for the parties' remaining minor child.

¶18 Loren timely appealed.

ISSUES AND STANDARDS OF REVIEW

¶19 Loren raises four issues on appeal. First, he contends the district court abused its discretion in imputing his monthly income at $6,662. In a divorce action, the district court "'is permitted considerable discretion in adjusting the financial and

property interests of the parties, and its actions are entitled to a presumption of validity.'" *Rayner v. Rayner*, 2013 UT App 269, ¶¶ 4, 26, 316 P.3d 455 (quoting *Goggin v. Goggin*, 2013 UT 16, ¶ 44, 299 P.3d 1079). We will reverse only if "(1) there was a misunderstanding or misapplication of the law resulting in substantial and prejudicial error; (2) the evidence clearly preponderated against the finding; . . . (3) such a serious inequity has resulted as to manifest a clear abuse of discretion"; or (4) the district court "abuse[d] its discretion by failing to enter specific, detailed findings supporting its financial determinations." *Id.* (citations and internal quotation marks omitted).

¶20   Second, Loren contends the district court erred in awarding Lynessa alimony in the amount of $1,900 per month, "even if [Loren's] income should be imputed at $6,662," because the award was "hundreds of dollars in excess of [Lynessa's] stated monthly needs" because it included anticipated expenses and was combined with the award of child support.

¶21   Third, Loren contends the district court erred in "setting [his] child support obligation in an amount based upon his imputed income of $6,662" per month. We review the district court's "decisions regarding child support and alimony under the abuse of discretion standard." *Andrus v. Andrus*, 2007 UT App 291, ¶ 9, 169 P.3d 754.

¶22   Finally, Loren contends the district court erred in awarding Lynessa attorney fees because it failed to consider the "relevant attorney fees factors." Although the decision regarding attorney fees in divorce proceedings "rests primarily in the sound discretion of the [district] court," we will reverse the award if the court fails to provide adequate findings of fact regarding the following factors: (1) the receiving spouse's financial need, (2) the paying spouse's ability to pay, and (3) the reasonableness of the requested amount of fees. *See Oliekan v. Oliekan*, 2006 UT App 405, ¶ 30, 147 P.3d 464.

ANALYSIS

I. Imputed Income

¶23   Loren first contends the district court erred in imputing $6,662 in monthly income to him because the court used his 2004 tax return to determine the amount he was capable of making, rather than using the pay stubs or more recent tax returns, and added $20,000 to that amount based on expenses incurred during the marriage that were discussed at trial. But Loren has provided no reasoned analysis to support this contention and we therefore affirm with respect to this issue.

¶24   Rule 24 of the Utah Rules of Appellate Procedure identifies the briefing requirements on appeal. An appellant's brief must assert contentions of error that occurred in the proceedings below *and* develop a reasoned argument for why the purported errors should be reversed. *See* Utah R. App. P. 24(a)(8). The appellant's argument must be supported with citations to the record and legal authority that governs the issues presented. *See id.* An argument is inadequately briefed, and in violation of rule 24, when it "merely contains bald citations to authority [without] development of that authority and reasoned analysis based on that authority." *Bank of America v. Adamson*, 2017 UT 2, ¶ 11, 391 P.3d 196 (alteration in original) (citation and internal quotation marks omitted).

¶25   The Utah Supreme Court has recently clarified that the failure to comply with rule 24 is no longer "an absolute bar to review of an argument on appeal." *See Rose v. Office of Prof'l Conduct*, 2017 UT 50, ¶ 64, *petition for cert. filed*, Dec. 4, 2017 (No. 17-7003). But failure to adequately brief an argument will almost certainly result in the failure to "'carry [the] burden of persuasion on appeal.'" *See id.* (quoting *Adamson*, 2017 UT 2, ¶ 12).

¶26   Loren has marshaled the record facts he is challenging with respect to his imputed income—sixteen pages were

devoted to this issue, alone. *See* Utah R. App. P. 24(a)(6)(A); *see also id.* R. 24(a)(8). Loren also provided citations to a few cases and a statute. But he has failed to apply the legal authority he cited to any of the facts.

¶27   Because Loren failed to develop a reasoned argument with the use of legal authority to support his contention that the district court improperly imputed income to him, he has failed to meet his burden of persuasion on appeal with respect to this issue. *See Adamson*, 2017 UT 2, ¶ 12. We therefore affirm the district court's decision to impute to Loren a monthly income of $6,662. As a result, we likewise do not address his contention on appeal that the district court erred in "setting [his] child support obligation in an amount based upon his imputed income of $6,662" per month.

## II. Alimony

¶28   Loren contends that "even if the court's imputation of income" to him was correct, the alimony award of $1,900 per month was in excess of Lynessa's needs. Loren makes two overarching arguments related to this contention. First, he takes issue with items listed in Lynessa's financial declaration that "were not actual expenses," "were not supported by any evidence," and "did not exist" at the time of the marriage. Second, he argues the award was hundreds of dollars in excess of Lynessa's needs because she was also awarded $714.64 in child support.

¶29   In divorce proceedings, the district court's determinations related to financial interests of the parties "are entitled to a presumption of validity" and we will not reverse absent a clear abuse of discretion. *See Goggin v. Goggin*, 2013 UT 16, ¶ 26, 299 P.3d 1079 (citation and internal quotation marks omitted). "The purposes of an alimony award include enabling the receiving spouse to maintain, as nearly as possible, the standard of living enjoyed during the marriage, and preventing the receiving

spouse from becoming a public charge." *Rudman v. Rudman*, 812 P.2d 73, 76 (Utah Ct. App. 1991). The court must consider three factors when determining alimony: "(1) the financial condition and needs of the receiving spouse, (2) the ability of the receiving spouse to produce sufficient income for him- or herself, and (3) the ability of the responding spouse to provide support." *Id.*

A.     Lynessa's Monthly Expenses

¶30    Loren challenges the following three expenses identified in Lynessa's financial declaration: (1) a retirement account contribution, (2) a car loan, and (3) health insurance. He argues that these were not "actual expenses" or needs because Lynessa testified they were anticipated expenses rather than what she was presently paying.

¶31    An award of alimony is intended to help the parties "maintain the standard of living established over the course of the marriage rather than the amount that is actually being spent." *Woolums v. Woolums*, 2013 UT App 232, ¶ 9, 312 P.3d 939. We have previously defined "standard of living" as "a minimum of necessities, comforts, or luxuries that is essential to maintaining a person in customary or proper status or circumstances." *Howell v. Howell*, 806 P.2d 1209, 1211 (Utah Ct. App. 1991) (citation and internal quotation marks omitted). This court has therefore "disavowed the notion that 'standard of living is determined by actual expenses alone.'" *Woolums*, 2013 UT App 232, ¶ 9 (quoting *Howell*, 806 P.2d at 1212). Actual expenses "may be necessarily lower than needed to maintain an appropriate standard of living for various reasons, including, possibly, lack of income." *Howell*, 806 P.2d at 1212. It necessarily follows that if the court determines the receiving spouse's actual and anticipated needs are reasonable, that they are consistent with the standard of living enjoyed during the marriage, and that the paying spouse can afford to cover the shortfall of those

needs, then the alimony award should be in an amount to accommodate that shortfall.

¶32    Here, the anticipated expenses of the car loan and health insurance were reasonable anticipated expenses for basic needs that were established as standard during the marriage. Loren, Lynessa, and Tyler each testified at trial that Lynessa had a car during the marriage, but that it broke down and she was without a car for two years leading up to the trial. Lynessa testified that she would have purchased a car to replace the old one if she had been receiving the alimony she was entitled to. Therefore, it was reasonable for the court to include the car loan in Lynessa's monthly expenses.

¶33    The district court likewise did not abuse its discretion by including health insurance costs in Lynessa's monthly expenses. Lynessa testified that she suffered from medical conditions both during and after the marriage for which she took medication and was under medical care. There was no suggestion at trial that her medical needs were not provided for during the marriage, and the original divorce decree indicated that Loren was providing some medical insurance at the time the marriage dissolved.[2] And although Lynessa was not asked at trial whether the parties had health insurance during the marriage, Loren was aware, prior to trial, that Lynessa identified health insurance as an expense in her financial declaration. He therefore left the issue for the district court to determine, using its broad discretion based on the evidence before it. *See Woolums*, 2013 UT App 232, ¶ 10 (holding "[t]he district court's evaluation of and reliance on Wife's testimony, along with its own determinations of the reasonableness of the claimed expenses, fell squarely within its

---

2. Our review of the record shows that the original divorce decree ordered Loren to continue to pay for the children's health insurance.

broad discretion to determine an appropriate alimony award"). Given the medical conditions Lynessa testified she suffered from both during and after the marriage, and that health insurance was at least provided for the children during the marriage, as well as Loren's failure to contest whether health insurance for Lynessa was established during the marriage, we conclude there was no abuse of discretion in considering anticipated health insurance costs in her monthly expenses.

¶34    As to Loren's challenge regarding the retirement account, we agree that the district court exceeded the scope of its discretion when it included among Lynessa's necessary monthly expenses $200 per month for retirement account contributions.

¶35    Utah Code section 30-3-5 allows the district court to address the needs of a spouse that did not exist during the marriage or at the time the divorce decree was entered only if "the court finds extenuating circumstances that justify that action." Utah Code Ann. § 30-3-5(h)(ii) (LexisNexis Supp. 2017). This court has previously explained that retirement accounts "may not ordinarily be factored into an alimony determination," unless "funds for post-divorce . . . retirement accounts are necessary because contributing to such accounts was standard practice during the marriage and helped to form the couple's marital standard of living." *Bakanowski v. Bakanowski*, 2003 UT App 357, ¶ 16, 80 P.3d 153. If this circumstance exists and the district court determines that the retirement account "should be taken into account as part of the needs analysis, then the court's findings must be even more detailed than those in a standard needs analysis," because this award "is the exception, rather than the rule." *Id.*; *see also Rudman v. Rudman*, 812 P.2d 73, 76 n.1 (Utah Ct. App. 1991) (explaining that in cases "where the evidence is severely conflicted, it is essential that the reviewing court clearly understand the findings on which the [district] court bases its conclusions").

¶36 Here, the district court made no findings related to Lynessa's claim for $200 of monthly retirement contribution. At best, the order noted, "[Lynessa] included expenses that were reasonable, such as a car, insurance and health insurance, even though she does not presently have them but would have them if [Loren] paid support." Though this statement could be read as a non-exhaustive list of reasonable expenses not yet incurred, failure to provide any factual findings related to the claimed retirement account expense is a violation of our explicit requirement that the court's findings related to such accounts "must be even more detailed than those in a standard needs analysis." *See Bakanowski*, 2003 UT App 357, ¶ 16. In addition, our review of the record shows that the initial divorce decree specifically stated, "<u>Retirement and Savings</u>. Neither party has a pension nor a profit sharing plan through his or her place of employment or otherwise." The district court relied on this divorce decree for certain of its findings of facts and it was therefore an abuse of discretion to consider the anticipated retirement fund contribution in Lynessa's monthly expenses.

¶37 We remand to the district court for the limited purpose of removing the $200 retirement fund contribution from Lynessa's necessary monthly expenses and to adjust the award of alimony accordingly.

B.     Awarding Alimony and Child Support

¶38 Loren contends the district court abused its discretion in awarding Lynessa $1,900 for alimony because she was also receiving approximately $715 per month in child support, and these combined awards exceed her stated monthly expenses. We disagree.

¶39 Child support is a "basic and unalienable right . . . vested in the minor." *See Reick v. Reick*, 652 P.2d 916, 917 (Utah 1982) (per curiam). This court has previously explained that "[i]t is typically best practice for [district] courts to analyze alimony

without factoring in child support obligations." *Dobson v. Dobson*, 2012 UT App 373, ¶ 11, 294 P.3d 591. But we have held that "treating child support payments as the recipient spouse's income is permissible where the recipient combine[s] her expenses with those of the children in her financial declaration." *Roberts v. Roberts*, 2014 UT App 211, ¶ 17, 335 P.3d 378 (alteration in original) (citation and internal quotation marks omitted). "[W]hen at least some of the children's expenses seem to have been factored into the alimony calculation already" then the district court must explain its decision not to include child support payments as income. *See id.*

¶40 Here, the district court specifically removed "the amount spent on adult children [and] school fees which can be waived" from Lynessa's monthly expenses. Loren has not directed us to anything within Lynessa's financial declaration that could be considered additional expenses spent solely on the minor child still residing with Lynessa. Without providing a reasoned analysis with respect to awarding child support in addition to alimony, Loren has failed to carry his burden of persuasion on appeal with respect to this issue. *See Bank of America v. Adamson*, 2017 UT 2, ¶¶ 12–13, 391 P.3d 196 (providing that a party who "fails to devote adequate attention to an issue is almost certainly going to fail to meet its burden of persuasion" on appeal).

¶41 The court also explained that "although her current living style does not match what she enjoyed during the marriage, there are insufficient funds after the divorce . . . between the parties to allow her to live that lifestyle." The court appears to imply that the award of alimony could have been higher if Loren's income was similar to what he earned during the marriage.

¶42 The district court did not abuse its discretion when it awarded alimony to Lynessa in addition to child support.

III. Attorney Fees

¶43    Loren contends the district court erred in awarding attorney fees to Lynessa without "an appropriate consideration of the relevant attorney fees factors." We disagree.

¶44    In the context of divorce, "[t]he decision to award attorney fees and the amount thereof rests primarily in the sound discretion of the [district] court," but the court must "base the award on evidence of the receiving spouse's financial need, the payor spouse's ability to pay, and the reasonableness of the requested fees." *Childs v. Childs*, 967 P.2d 942, 947 (Utah Ct. App. 1998); *see also* Utah Code Ann. § 30-3-3(1) (LexisNexis 2013) (providing that in an action to modify child support or alimony, "the court may order a party to pay the costs, attorney fees, and witness fees . . . of the other party to enable the other party to prosecute or defend the action").

¶45    Here, the district court considered the required attorney fees factors when awarding fees to Lynessa. The court found that because Loren "has been able to get support and income modified from the [divorce] decree," and "since [he] has not been paying adequate alimony or child support, [Lynessa] cannot afford attorney fees but [Loren] has the ability to pay them."[3] Loren's ability to pay was also based on the income imputed to him.

---

3. The court also commented that Loren's "hiding of income and failure to be forthcoming with complete records makes it inequitable to award him attorney[] fees" and that those same factors would allow an award of attorney fees to Lynessa "under the bad faith provision" of Utah Code section 78B-5-825. We agree with Loren that this was an incorrect application of section 78B-5-825, which allows a court to award attorney fees to the prevailing party "if the court determines that the action or
(continued…)

¶46 The district court did not abuse its discretion in awarding attorney fees to Lynessa.[4]

¶47 On appeal, Lynessa has requested that she be awarded attorney fees incurred in her defense of this appeal. "Generally, when the [district] court awards fees in a domestic action to the party who then substantially prevails on appeal, fees will also be awarded to that party on appeal." *Osguthorpe v. Osguthorpe*, 872

---

(…continued)
defense to the action was without merit or not brought or asserted in good faith." Utah Code Ann. § 78B-5-825(1) (LexisNexis 2012). First, it is unclear who the prevailing party is in this situation. Although Loren was unable to persuade the court that he was making only $11 per hour, he successfully petitioned it to reduce his obligations of alimony and child support. Second, because of this success, we cannot agree that the action was without merit or brought in bad faith. Though we do not condone Loren's failure to provide adequate financial documents to support his alleged income, we do not agree with the court that Lynessa deserves attorney fees under the bad faith provision of the attorney fees statute. But this analysis has no effect on the district court's award of attorney fees under Utah Code section 30-3-3.

4. The court awarded attorney fees in the amount of $16,403.44 "as stated in Petitioner's Affidavit of Attorney's Fees." This affidavit provided the various billing rates of attorneys from two law firms, and provided the total number of hours each firm spent on Lynessa's case; the affidavit did not identify which attorneys spent what amount of time on the case in calculating the final amount. But Loren has not argued this was error and therefore we will not address whether it was an abuse of discretion for the district court to rely solely on this affidavit when determining the amount of attorney fees.

P.2d 1057, 1059 (Utah Ct. App. 1994) (citation and internal quotation marks omitted); *see also Oliekan v. Oliekan*, 2006 UT App 405, ¶ 32, 147 P.3d 464 ("[W]e will generally award attorney fees on appeal to the prevailing party if the [district] court awarded attorney fees and the receiving party prevails on the main issues on appeal."). Because the district court properly awarded attorney fees to Lynessa in the action below and because she has substantially prevailed on appeal, we accordingly award her attorney fees on appeal and remand to the district court to calculate the reasonable amount of fees and costs she incurred in connection with this appeal. *See Osguthorpe*, 872 P.2d at 1059.


CONCLUSION

¶48    We conclude the district court did not abuse its discretion when it included anticipated costs for health insurance and car loan payments in Lynessa's necessary monthly expenses because they were reasonable expenses within the marriage standard of living and that she would have continued to incur if Loren had consistently paid her alimony and child support. The court also did not abuse its discretion in awarding child support in addition to alimony because child support is a vested right of the child and the court removed costs from Lynessa's monthly expenses that related specifically to the children. The district court also did not abuse its discretion in awarding attorney fees to Lynessa under Utah Code section 30-3-3 because it gave appropriate consideration to the relevant attorney fees factors.

¶49    We further conclude the district court abused its discretion when it included retirement account contributions in Lynessa's necessary monthly expenses because contribution to such an account did not exist during the marriage.

¶50    Accordingly, we remand to the district court for the removal of retirement account contribution expenses from the

alimony calculation and to calculate reasonable attorney fees incurred by Lynessa on appeal.

─────────