**2014 UT App 204**

## THE UTAH COURT OF APPEALS

DANIELLE BARRANI,
Petitioner and Appellee,

*v.*

KADRI O. BARRANI,
Respondent and Appellant.

Memorandum Decision
No. 20120212-CA
Filed August 28, 2014

Third District Court, Salt Lake Department
The Honorable Paul G. Maughan
No. 084901926

Cobie W. Spevak and Curtis L. Wenger, Attorneys
for Appellant

Danielle Barrani, Appellee Pro Se

JUDGE STEPHEN L. ROTH authored this Memorandum Decision, in
which JUDGES GREGORY K. ORME and MICHELE M. CHRISTIANSEN
concurred.

ROTH, Judge:

¶1      Kadri O. Barrani (Husband) appeals from the trial court's
decisions following a bench trial on child custody, child support,
and alimony. We affirm the child custody and child support
orders. We remand, however, for the court to reconsider the
amount of monthly alimony Husband must pay to Danielle
Barrani (Wife).

I. Custody

¶2    Husband first challenges the trial court's decision to award primary physical custody of the parties' children to Wife in the face of the joint custody recommendation by Husband's expert witness. Husband and Wife have two minor children who each have special needs and require extensive attention and care. Although both parents are capable of caring for the children and the children are strongly bonded with each parent, Husband and Wife are "extremely challeng[ed]" by co-parenting due to the demands of the children's needs and Husband's and Wife's differing perspectives on how to manage their care. At trial, Husband proposed a custody arrangement in which he and Wife would equally share physical custody. According to Husband, this arrangement would allow each parent an equal break from parenting so that the parent would then be able to provide the children with the best care when they were in his or her charge. Under Husband's proposed schedule, one parent would have the children Mondays and Tuesdays, the other would have them on Wednesdays and Thursdays, and the parents would rotate the long weekends (the 2-2-3 schedule). The trial court rejected the 2-2-3 schedule, finding that such an arrangement was "too disruptive" given the needs of the children. The court also found that Husband "has not demonstrated any feasible way in which he could take on additional visitation or custody involving joint custody and still maintain his current employment without adversely affecting that employment." Accordingly, the court determined that the 2-2-3 schedule was not in the children's best interests. Instead, it retained the custody arrangement that the parties had agreed to during their two-year separation (the existing schedule), which gave Wife primary physical custody of the children and allowed Husband overnight parent-time each Wednesday and every other weekend.

¶3    On appeal, Husband contends that the record does not support the trial court's express finding that the 2-2-3 schedule was not in the children's best interests or the implicit corollary finding that the existing schedule was. Husband identifies what he perceives to be two errors in this decision: first, that the court

inappropriately disregarded the recommendation of the expert custody evaluator who endorsed the 2-2-3 schedule that Husband had proposed and, second, that there was no basis for the court's finding that Husband could not provide additional care for the children and maintain his employment. "The trial court's decision regarding custody will not be upset absent a showing of an abuse of discretion or manifest injustice." *Woodward v. LaFranca*, 2013 UT App 147, ¶ 6, 305 P.3d 181 (citation and internal quotation marks omitted). "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Utah R. Civ. P. 52(a).

A.     The Custody Evaluator's Recommendation

¶4     "[C]ourts are not bound to accept the testimony of an expert and [are] free to judge the expert testimony as to its credibility and its persuasive influence in light of all of the other evidence in the case." *State v. Maestas*, 2012 UT 46, ¶ 200, 299 P.3d 892 (second alteration in original) (citation and internal quotation marks omitted); *accord In re G.Y.*, 962 P.2d 78, 83 (Utah Ct. App. 1998) ("[A] trial court is free to accept or reject an expert's opinion and may accord that opinion whatever weight it deems proper."); *cf. Lyon v. Bryan*, 2011 UT App 256, ¶ 10, 262 P.3d 1199 ("A jury is not required to believe an expert witness even when that expert's opinion is unchallenged by the opinion of an opposing expert."). Nevertheless, "'[a]lthough the trial court [is] not bound to accept' an expert's recommendation, the court is expected to articulate 'some reason for rejecting the recommendation.'" *Woodward*, 2013 UT App 147, ¶ 7 (second alteration in original) (quoting *Tuckey v. Tuckey*, 649 P.2d 88, 91 (Utah 1982)). The trial court did so here.

¶5     The trial court stated that it would not impose the 2-2-3 schedule because it was "too disruptive" for the children. This decision is supported by Wife's testimony. Wife testified that she believed the 2-2-3 schedule would be disruptive in terms of attending to the children's needs and maintaining their

extracurricular activities. She explained that the parties' daughter frequently gets sick for extended periods and that when the daughter is sick, she cannot be moved as often as the 2-2-3 schedule would require. Furthermore, Wife was concerned that moving between Husband's and Wife's homes so frequently would negatively affect the behavior of the children, especially their daughter, whose behavioral health depends on routine. Wife opined that the existing schedule was working well and expressed concern that a new schedule would increase the daughter's behavioral issues. Wife was also concerned that the 2-2-3 schedule would increase the opportunities for conflict between herself and Husband. Wife offered as an example that the parties cannot agree about which extracurricular activities the children should participate in and that the 2-2-3 schedule would require the children either to give up their current activities or to reschedule them for the days the children were in her care.

¶6 Thus, in reaching its decision that the existing schedule best met the children's needs, the trial court apparently gave more weight to Wife's testimony than to the custody evaluator's opinion. Because determinations regarding the weight to be given to the testimony of witnesses, including expert witnesses, are within the province of the finder of fact, we will not second guess a court's decisions about evidentiary weight and credibility if there is a reasonable basis in the record to support them. *Id.* ("Thus, we may reverse a trial court's credibility determination [only] if its findings in support of that determination are clearly erroneous, that is, if they are against the clear weight of the evidence . . . ." (citation and internal quotation marks omitted)). In this case, the trial court explained why it was rejecting the expert's recommendation, and that explanation has a basis in the record. Therefore, we decline to disturb either the trial court's determination that the 2-2-3 schedule was too disruptive or its decision to continue the existing schedule, even though that schedule deviated from the expert's recommendation.

B.      Husband's Employment

¶7      Husband also challenges the court's finding that the 2-2-3 schedule was not feasible because Husband cannot provide additional care for the children and maintain his employment. Despite hearing from the custody evaluator that Husband had only "somewhat less" availability to care for the children than Wife and that Husband was willing to provide additional care, the court remained concerned that Husband "ha[d] not demonstrated any feasible way in which he could take on additional . . . custody . . . and still maintain his current employment" or how his assumption of additional custody would allow Wife to engage in employment while he cared for the children. Husband asserts that by taking advantage of the flexibility in his work schedule, he had already cared for the children more frequently than the existing schedule contemplated over the course of a few months. Yet although the court seemed willing to consider allowing Husband more custody or parent-time, it found that Husband had not shown that such an arrangement could be sustained over the longer term or that it would best meet the children's needs.

¶8      This finding is supported by ample evidence in the record. Husband and Wife both testified that Husband had cared for the children for longer periods than the existing schedule contemplated over the course of a few months but that such extended care was provided on an emergency, short-term basis. Twice, Husband provided additional care while Wife underwent emergency medical procedures. On another occasion, Husband had cared for the children for additional days while Wife was preparing to move. However, Husband did not provide the court with a plan for maintaining his current workload as a real estate appraiser, which requires daily travel to property sites located "anywhere from Weber County to Utah County," while caring for the children during two days of the traditional work week plus every other long weekend, which also includes a work day. And although the children are in school for some of the time they would be with him under the 2-2-3 schedule, Husband did not describe how he would balance his

employment obligations when one of the children became ill, which Wife testified occurred frequently and unexpectedly. Nor did Husband's proposal that he assume additional care of the children necessarily allow Wife to obtain employment to offset any reduced income while he had the children. In the context of explaining why she could not get a job even though she had the time, Wife stated that one parent needed to be available to care for the children during any illnesses, which, at least with the daughter, tend to be prolonged and often require her to stay at one home until well enough to be moved. Wife testified that over the course of the marriage and in the years following the parties' separation, she has generally been the one who provides care while the children are sick, even if doing so encroached upon Husband's exercise of parent-time. Thus, although Husband had cared for the children for more time than the existing schedule contemplated over the course of a few months, he did not demonstrate that his employment provided the flexibility to do so on a sustained basis.

C.     Summary

¶9     As a result of its findings, the court decided against the equal-share custody arrangement Husband proposed, even though recommended by Husband's expert, and awarded Wife primary physical custody of the children. Aside from claiming that the court disregarded the custody evaluator's recommendations and that the underlying findings were not otherwise supported by the record, Husband has not asserted that the trial court abused its discretion in reaching its custody decision. We therefore affirm the court's custody decision. *See Woodward v. LaFranca*, 2013 UT App 147, ¶ 6, 305 P.3d 181 ("The trial court's decision regarding custody will not be upset absent a showing of an abuse of discretion or manifest injustice." (citation and internal quotation marks omitted)).

## II. Child Support

¶10     Husband next challenges the trial court's order that he pay $1,238 per month in child support. Husband contends that

the trial court erred in calculating that amount because it failed to deduct necessary business expenses, as reported on his federal tax returns, from his gross income.

¶11 A noncustodial parent's child support obligation is calculated using each parent's adjusted gross income. Utah Code Ann. § 78B-12-207 (LexisNexis 2012). When a parent is self-employed, "[g]ross income . . . shall be calculated by subtracting necessary expenses *required for self-employment* or business operation from gross receipts." *Id.* § 78B-12-203(4)(a) (emphasis added). However, "[o]nly those expenses *necessary to allow the business to operate* at a reasonable level may be deducted from gross receipts." *Id.* (emphasis added). In addition, not all business expenses claimed on a tax return constitute deductible business expenses under the child support statutes. *Id.* § 78B-12-203(4)(b). In assessing a parent's ability to pay child support, "the trial court [is] best equipped to find whether [expenses are] necessary." *Bingham v. Bingham*, 872 P.2d 1065, 1067 (Utah Ct. App. 1994). As a result, we accord a court broad discretion to determine whether a particular expense is necessary to operate the parent's business. *Jensen v. Bowcut*, 892 P.2d 1053, 1057 (Utah Ct. App. 1995).

¶12 At trial, Husband testified that his business as a real estate appraiser requires him to travel daily to property sites, which can be located "anywhere from Weber County to Utah County." As a consequence, he needs a cellular telephone and a vehicle. Husband also reported that he prepares his appraisal reports electronically and keeps his own accounting. Accordingly, Husband claimed he had incurred business expenses for his vehicle (travel and depreciation), cell phone, meals while traveling, and a home office.

¶13 As support for his claimed business expenses, Husband submitted his 2008 and 2009 tax returns, which showed that he had taken deductions for these expenses, and a minute entry from the domestic relations commissioner, in which the commissioner had considered these claimed expenses as part of her detailed recommendation on alimony. In her minute entry,

the commissioner recommended that these expenses be disallowed in calculating Husband's income. She noted that several expenses were actually claims of depreciation and that Husband had not demonstrated that "the depreciation expenses were actually out of pocket expenses." Regarding Husband's other claimed business expenses, the commissioner indicated that she was not convinced that "these expenses . . . were solely business-related" or necessary to "'allow his business to operate at a reasonable level'" because Husband had not submitted any receipts. (Quoting Utah Code Ann. § 78B-12-203(4).) The trial court adopted the commissioner's recommendation that the business expenses be disallowed, explaining that after "conduct[ing] an in-depth review" of Husband's proposed deductions, the commissioner had determined that Husband had "failed to show that they were solely business-related." Husband also had not demonstrated to the trial court that he incurred the vehicle and office expenses "out-of-pocket."

¶14    On appeal, Husband contends that the trial court held him to a higher standard of proof than the applicable statute contemplates. When reviewing an interpretation of a statute, we look first at the statute's plain language with the goal of giving effect to its intended purpose. *In re Adoption of Baby E.Z.*, 2011 UT 38, ¶ 15, 266 P.3d 702. According to Husband, the statute "does not require a showing that the expenses were solely business-related" or "proof that business-related expenses are [incurred] out-of-pocket." Husband's arguments, however, overlook the fact that the statute does require the person claiming business expenses to "prove that those expenses are necessary to allow the business to operate at a reasonable level." *Reinhart v. Reinhart*, 963 P.2d 757, 759 n.3 (Utah Ct. App. 1998); *see also* Utah Code Ann. § 78B-12-203(4)(a). And the trial court and the commissioner interpreted this language to mean that expenses that are necessary to operate the business do not include those that would be incurred for personal use regardless of the business. Such an interpretation is consistent with the statute's plain meaning and its purpose.

¶15 The expenses that Husband claimed as necessary for business are commonly used for personal as well as business purposes. For example, a vehicle and a cellular telephone are common accoutrements of personal life, and Husband has not demonstrated that it was unreasonable for the court to require, for child support purposes, that he show that they have been dedicated entirely to business use or establish the proportion of personal and business use for each in order to establish that the associated expenses are "necessary" for the business rather than simply expenses that would have been incurred at the same level whether or not used for business. *See* Utah Code Ann. § 78B-12-203(4)(a); *Reinhart*, 963 P.2d at 759 n.3. The issue with regard to meals and the home office is similar; everyone has food and housing expenses, and the question is whether amounts claimed as business expenses are simply duplicates of what would be incurred in any event or instead include an increase attributable to the operation of the business itself. Again, Husband has not demonstrated that it was unreasonable for the trial court to require him to show that the submitted business expenses were incurred entirely—or incrementally—for the purpose of operating the business. Husband did not provide any evidence to establish this. And from the evidence that was presented, the trial court was not convinced that the entirety of Husband's claimed expenses were "necessary to allow the business to operate at a reasonable level." *See Reinhart*, 963 P.2d at 759 n.3; *see also* Utah Code Ann. § 78B-12-203(4)(b) (explaining that a trial court need not find all business expenses claimed on a tax return eligible for deduction from gross income when calculating income for purposes of awarding child support).

¶16 Here, both Husband and the trial court had the benefit of the commissioner's detailed critique of his gross-expenses approach and her recommendation to disallow many of his claimed business expenses. Husband nevertheless chose to continue with what amounted to an "all or nothing" approach at trial, which the trial court also rejected. The trial court reviewed the commissioner's recommendation and made its own analysis of the evidence to arrive at a conclusion that Husband's claimed offsets to his income for purposes of calculating child support

were not justified because he had failed to separate personal and business use. "[T]he trial court was best equipped to find whether [Husband's expenses] were necessary." *See Bingham v. Bingham*, 872 P.2d 1065, 1067 (Utah Ct. App. 1994); *see also Jensen v. Bowcut*, 892 P.2d 1053, 1057 (Utah Ct. App. 1995) ("Application of this provision [for deducting necessary business expenses] is within the broad discretion of the trial court."). Under circumstances that suggested personal as well as business purposes for the claimed expenses, the trial court did not abuse its discretion in requiring Husband to separate the two for purposes of establishing his adjusted gross income to calculate child support.

¶17 Husband also contends that the trial court failed to deduct the depreciation of his home office and vehicle because he did not incur these expenses "out-of-pocket." Husband correctly points out that depreciation is not an "out-of-pocket" expense. *See* Internal Revenue Service, *A Brief Overview of Depreciation* (last updated July 2, 2014), http://www.irs.gov/Businesses/Small-Businesses-&-Self-Employed/A-Brief-Overview-of-Depreciation ("Depreciation is an income tax deduction that allows a taxpayer to recover the cost or other basis of certain property. It is an annual allowance for the wear and tear, deterioration, or obsolescence of the property. Most types of tangible property (except, land), such as buildings, machinery, vehicles, furniture, and equipment are depreciable."); *see also "Depreciate," Merriam-Webster.com*, www.merriam-webster.com/dictionary/depreciate (last visited July 28, 2014) (defining "depreciate" as "to deduct from taxable income a portion of the original cost of (a business asset) over several years as the value of the asset decreases"). However, we need not address the effect of the trial court's statement that depreciation is not "out-of-pocket" because Husband has not demonstrated that depreciation is a type of expense that ought to be deducted from gross income when calculating child support.

¶18 Whether depreciation is a necessary business expense that can be deducted from income for purposes of calculating child support is not addressed by the child support statutes. *See* Utah

Code Ann. § 78B-12-203(4) (LexisNexis 2012) (calculating "[g]ross income . . . by subtracting *necessary expenses required for self-employment* or business operation from gross receipts" but noting that not all business expenses claimed on a tax return constitute deductible business expenses for purposes of calculating child support (emphasis added)). And Husband has not provided sufficient analysis of this issue to permit us to meaningfully review it. Indeed, Husband cites only a decision by the Alaska Supreme Court, in which it recognized that "straight-line depreciation of business equipment" is a "real" cost that should be deducted from self-employment income prior to calculating child support income so long as the asset was not acquired to avoid or reduce child support. *Ogard v. Ogard*, 808 P.2d 815, 819 (Alaska 1991). The Alaska case, however, notes that under the applicable rule, other types of depreciation are not deductible for purposes of calculating child support income. *Id.* At least one other jurisdiction has held that depreciation is not an ordinary and necessary business expense in the child support context. *See Sizemore v. Sizemore*, 603 N.E.2d 1032, 1034–35 (Ohio Ct. App. 1991). Without more, the fact that an Alaska court permitted depreciation to be deducted from income under limited circumstances—circumstances that Husband has not demonstrated were even present here—does not persuade us to overturn the trial court's decision to exclude it in this case.

¶19    Because Husband has failed to demonstrate that the trial court erred in either its findings or its interpretation of the child support statute, we will not disturb its decision to disallow the claimed expenses. *See Bingham*, 872 P.2d at 1067. Accordingly, we affirm the child support award.

## III. Alimony

¶20    Finally, Husband challenges the trial court's findings supporting its order that he pay Wife $1,892 per month in alimony for eleven years (the duration of the marriage). Husband contends that the court's findings lack evidentiary support and are therefore clearly erroneous. In particular, he asserts that the court underestimated Wife's ability to earn

income and overestimated his ability to pay support because it miscalculated his income and improperly reduced his monthly expenses.

¶21    In awarding alimony, the trial court must consider "[1] the financial conditions and needs of the [recipient spouse]; [2] the ability of the [recipient] to produce a sufficient income . . . ; and [3] the ability of the [payor spouse] to provide support." *Jones v. Jones*, 700 P.2d 1072, 1075 (Utah 1985) (first, third, and fifth alterations in original) (citation and internal quotation marks omitted). So long as these factors are taken into account, "[t]rial courts have considerable discretion in determining alimony . . . and [determinations of alimony] will be upheld on appeal unless a clear and prejudicial abuse of discretion is demonstrated." *Jensen v. Jensen*, 2008 UT App 392, ¶ 5, 197 P.3d 117 (omission and second alteration in original) (citation and internal quotation marks omitted). "[T]he court must support[] its decision with adequate findings and conclusions." *Kidd v. Kidd*, 2014 UT App 26, ¶ 13, 321 P.3d 200 (second alteration in original) (citation and internal quotation marks omitted). "Those findings must be sufficiently detailed and include enough subsidiary facts to disclose the steps by which the ultimate conclusion on each factual issue was reached." *Id.* (citation and internal quotation marks omitted). Husband challenges the trial court's findings regarding two of the statutory factors: Wife's earning capacity and Husband's ability to pay support.

A.    Wife's Earning Capacity

¶22    On the issue of Wife's ability to earn, Husband contests the court's finding that Wife "will be unable to work in the foreseeable future while caring for these children," which was the basis for its decision not to impute income to Wife. Husband claims that the court's finding is "against the weight of the evidence" because Wife had testified that she spends significant time volunteering—time that she could just as well spend in paid employment. We find no error in the trial court's determination of Wife's earning capacity.

¶23   The court heard testimony that Wife has a bachelor's degree in business management but also that, other than some unpaid management of the parties' rental properties, she worked outside of the home very little during the eleven-year marriage. Her gross monthly income during the months that she did work outside the home was $3,000 or less. Wife explained that the children's needs prohibited her from seeking employment during the marriage and that the intensity and ongoing nature of their needs as a practical matter continues to prevent her from working outside the home after the divorce. Wife did testify that she spent a significant number of hours volunteering, both during the marriage and post-separation, but, she explained, the volunteer work had flexible hours and allowed her to bring the children with her, unlike any paid work she was likely to be able to obtain.

¶24   Based on Wife's testimony and other evidence about the parenting challenges inherent in the children's special needs, the trial court declined to impute any income to Wife because "she will be unable to work in the foreseeable future while caring for these children." Husband contends that Wife's testimony that she has spent significant time volunteering makes the court's finding that Wife is "unable to work" clearly erroneous. However, an appellate court's role is not to reweigh the evidence presented at trial but only to determine whether the court's decision is supported by the evidence, leaving questions of credibility and weight to the trial court. *Kimball v. Kimball*, 2009 UT App 233, ¶ 20 n.5, 217 P.3d 733 ("No matter what contrary facts might have been found from all the evidence, our deference to the trial court's pre-eminent role as fact-finder requires us to take the findings of fact as our starting point, unless particular findings have been shown . . . to lack legally adequate evidentiary support."). Husband's complaint is essentially that if Wife had time to volunteer, she had at least equal time to get a paying job. But because Wife testified that paid employment did not provide the flexibility that volunteer work does to attend to the children's extensive needs, there is a basis in the record for the trial court's finding that Wife "will be unable to work . . . while caring for these children." Accordingly, the court's finding

that Wife was unable to obtain work and provide the children the level of care they require is not clearly erroneous, and that finding supports the court's conclusion about Wife's ability to provide for her own needs under these circumstances.

B.      Husband's Ability to Pay Alimony

¶25    Husband also challenges the court's calculation of his income in determining his ability to pay alimony on two grounds. First, he takes issue with the trial court's finding that, as a real estate appraiser, he is capable of earning $5,465 per month, the average of his incomes between 2007 and 2009. He claims that in calculating his monthly income, the court "should not have relied on his 2007 [tax] returns" because after "the [2008] housing market collapse had affected all areas of the industry," he has not been capable of making the same income in today's market as he was in 2007. But Husband's challenge oversimplifies the evidence presented at trial. On this issue, the court heard from Husband that he is self-employed and that his income fluctuates depending upon the real estate market. For example, between 2007 and 2009, Husband's gross income dropped from $81,700 to $37,495 and then rose again to $77,545. Husband further testified that he expects his income to decrease in the future because of a new law that requires him to pay up to half of the fee he receives from doing an appraisal to a third-party referral service.[1] He asserted that based on his net income in 2008 and 2009, $3,550 is a reasonable estimate of how much he can now earn monthly. Husband also testified that he brings in another $1,000 a month in rent. However, he discouraged the court from considering the rental income as part of his monthly income on the basis that he has seen a net loss on his rental units since the separation because he has paid more toward the

---

1. Husband never identified the specific law that would impose this obligation.

mortgage than he has received in rent.[2] Husband also submitted a financial declaration, in which he stated that he incurs $4,042 in monthly expenses, not including child support. He requested that no alimony be awarded because his monthly expenses and income demonstrated that he had no ability to pay alimony.

¶26 The trial court accepted Husband's invitation not to consider rental income but rejected Husband's contention that only his 2008 and 2009 income ought to be considered in calculating his monthly income. Instead, it determined that Husband's three-year gross-income history "is a better indicator of [Husband]'s income" and that based on that history, Husband is capable of earning $5,465 per month. There is a rational basis in the evidence for the trial court to take this approach in determining Husband's ability to pay alimony. For instance, although Husband's 2008 income was considerably lower than his 2007 income, Husband had testified that since the 2008 housing market collapse, he had "tried to maximize" his income by "tak[ing] as much work as possible," including expanding the market areas in which he appraises homes. And, indeed, Husband's 2009 income is reasonably consistent with his 2007 income, suggesting that the 2008 decrease related to the housing market collapse was an anomaly in Husband's overall earning history. Husband criticizes the fact that the court gave any weight at all to his 2007 earnings, implying that, in doing so, it gave too little weight to his 2008 earnings. In fact, the trial court included the significantly lower 2008 income, along with Husband's higher income both before and after 2008, in determining Husband's future earning capacity. Thus, the

2. Husband owns a triplex. During the marriage, he, Wife, and the children lived in one unit, and they rented out the other two units. Following the separation, Husband continued to reside in the unit, and the parties stipulated that Wife would either live in one of the other units rent-free or rent out the unit and apply the proceeds toward alternative housing. This arrangement resulted in Husband having income from only one rental unit.

court's calculation of Husband's monthly income sufficiently recognizes both the risk and unpredictability in Husband's line of work and his ability to earn over time. Husband has not persuaded us that that the trial court erred in determining that he is capable of earning $5,465 per month.

¶27 Husband's second complaint about the trial court's determination of his ability to pay alimony relates to his claimed monthly expenses. Husband argues that there was insufficient evidence to support the trial court's decision to reduce his monthly expenses by disallowing a monthly car payment of $395.[3] In doing so, the court reasoned that Husband had not demonstrated that he was currently making any payments on that obligation. Husband asserts that the court's finding is clearly erroneous because both his testimony at trial and his notarized financial declaration showed that he was paying $395 a month to his parents for a van and Wife did not put on any evidence to dispute that Husband has this ongoing obligation. Furthermore, he contends, the trial court had not "question[ed] any other of his expenses for which he had not provided proof per se but had simply listed on his financial declaration." The trial court explained, however, that it did not find credible Husband's claim to be paying his parents $395 per month for the van. Husband's testimony indicated that his parents had paid off his loan on the van to avoid its repossession. And although Husband claimed to be paying them back at a rate of $395 a month, he did not convince the trial court that this "payment . . . has been made or is ongoing," particularly where the original loan had been paid off and, other than Husband's claim to be repaying his parents, the van "is now otherwise paid for." From

---

3. For purposes of calculating his income to pay alimony, Husband claimed $4,042 in monthly expenses. The court disallowed $1,146 of those expenses ($846 for two car payments, $200 for food and household supplies, and $100 for home maintenance). Husband only challenges the disallowance of the $395 car payment.

its findings, it seems that the court was reluctant to credit the $395 car payment where the loan obligation was familial in nature and Husband had not presented any evidence to demonstrate that it was actually being paid, beyond Husband's own testimony and declaration. It is within the court's discretion to discredit a claim of debt because it finds the purely testimonial evidence of its existence, standing alone, to be unconvincing. *See Henshaw v. Henshaw*, 2012 UT App 56, ¶ 11, 271 P.3d 837 ("It is within the province of the trial court, as the finder of fact, to resolve issues of credibility."). Therefore, the trial court's decision to disallow as an expense the claimed payment on the van was not clearly erroneous. *Cf. Woolums v. Woolums*, 2013 UT App 232, ¶ 23, 312 P.3d 939 (Orme, J., concurring in part and dissenting in part) (dissenting from the majority's decision affirming the trial court's decision to disallow $400 for an intra-familial loan as part of the husband's monthly expense because under the circumstances, the loan at issue "seems to have been on much firmer footing" than intra-familial loans in other divorce cases because "there was a firmly established payment schedule of $500 per month").

C.      Remand

¶28     Although we have rejected Husband's challenges to the trial court's decisions regarding Wife's earning ability, Husband's income, and the $395 car payment, we nevertheless are concerned about the propriety of the alimony order because there appear to be a number of errors in the calculation of the monthly amount. After the trial court deducted certain disallowed expenses, it concluded that Husband had monthly expenses of $2,569. It then determined that because Wife had $2,900 in unmet needs[4] and Husband earned $2,896 more than he needed to meet his expenses, Husband could pay monthly

---

4. Husband has not challenged the trial court's finding that Wife has monthly expenses totaling $2,900.

alimony to Wife in the amount of $1,812, which the court concluded equaled the "shortfall between child support and her personal needs." The court's calculations appear flawed in certain respects.

¶29 First, the amount of alimony awarded seems to exceed Wife's needs. When Wife's total monthly expenses—$2,900—are offset by the monthly child support payment she receives—$1,238—she is left with what appears to be $1,662 in unmet expenses, not $1,812, the amount the trial court awarded in monthly alimony. Second, the amount of support ordered seems to exceed Husband's available income, even after correcting the apparent mathematical error in the alimony calculation. When alimony is reduced to $1,662, Husband's monthly support obligations total $2,900, which is roughly equivalent to the $2,896 the court concluded Husband had available to cover those obligations. However, there appears to be a mathematical error in that calculation as well. Of the $4,042 Husband claimed for monthly expenses, the court identified only $1,146 in expenses that were to be disallowed. Using these numbers, Husband's monthly expenses total $2,896, not $2,569 as the trial court calculated.[5] Thus, the trial court's alimony award appears to exceed Husband's ability to pay by about $300.

¶30 An alimony award in excess of the recipient's need is a basis for remand even when the payor spouse has the ability to pay. *See Bingham v. Bingham*, 872 P.2d 1065, 1068 (Utah Ct. App. 1994). In cases such as this, where the recipient's needs appear to exceed the payor's ability to pay and the alimony award seems to exceed the recipient's needs, we must remand to give the trial court an opportunity to address the apparent discrepancies in the alimony calculation and to conduct an appropriate

---

5. It appears that the trial court may have simply transposed the amount of Husband's expenses—$2,896—and the amount of income available to meet the court-imposed support obligations—$2,569.

reanalysis, which may include consideration of income equalization if, in the end, Husband's and Wife's expenses ultimately exceed the available income. *See Sellers v. Sellers*, 2010 UT App 393, ¶ 3, 246 P.3d 173 (explaining that "the courts will equalize the incomes of the parties [through an award of alimony] only in those situations in which one party does not earn enough to cover his or her demonstrated needs and the other party does not have the ability to pay enough to cover those needs"). We therefore remand to the trial court for the limited purpose of reassessing the amount of monthly alimony awarded. In remanding on this issue, we are not directing the trial court to simply make a $300 adjustment based on our calculation because that calculation is based on our own perception of the figures used by the court in calculating the amount of alimony. Rather, the court should reassess the award of alimony and ensure that the alimony award exceeds neither Wife's demonstrated need nor Husband's ability to pay.

## IV. Conclusion

¶31　We affirm the child custody and child support orders because Husband has not demonstrated any error in the findings that underlie them or otherwise shown any abuse of discretion. We also affirm the trial court's findings relating to Wife's ability to earn and Husband's ability to pay alimony to Wife. We nevertheless remand for the trial court to reconsider the amount of alimony awarded, taking into account the apparent calculation errors identified in this decision.

_____