2020 UT App 22

## THE UTAH COURT OF APPEALS

DEBBIE ANN REDDEN,
Appellee,
*v.*
SPENCER DEAN REDDEN,
Appellant.

Opinion
No. 20180852-CA
Filed February 13, 2020

Third District Court, Salt Lake Department
The Honorable Robert P. Faust
No. 164907729

Douglas L. Neeley, Attorney for Appellant

Jared L. Peterson, Attorney for Appellee

JUDGE JILL M. POHLMAN authored this Opinion, in which
JUDGES GREGORY K. ORME and MICHELE M. CHRISTIANSEN
FORSTER concurred.

POHLMAN, Judge:

¶1 Debbie Ann Redden and Spencer Dean Redden divorced in February 2018. After a bench trial, the district court entered findings of fact and conclusions of law on certain reserved issues surrounding the divorce, including alimony. On appeal, Spencer[1] challenges the court's alimony determination, arguing that the court exceeded its discretion by disallowing, for alimony purposes, his monthly expenses for student loan payments, vehicle loan payments, and credit card debt. We conclude that

---

1. Because the parties share the same last name, we refer to them by their first names for clarity, with no disrespect intended by the apparent informality.

the court acted within its discretion in disallowing the credit card debt as a monthly expense. But we conclude that the court exceeded its discretion in disallowing Spencer's student loan payments and both of his vehicle loan payments in its assessment of Spencer's monthly needs on the basis that the expenses did not reflect the marital standard of living. Accordingly, we affirm in part, reverse in part, vacate the alimony award, and remand for further proceedings.

## BACKGROUND

¶2      Spencer and Debbie married in March 2003. They separated in January 2016 and divorced in February 2018. In the divorce proceedings, the parties submitted to the district court several issues for resolution, including alimony.

¶3      The parties stipulated to assuming the debts each had listed in their respective financial declarations. Spencer listed as debts a federal student loan of $36,475, total credit card debt of $4,756, and total vehicle loan debt of $29,762. Spencer also listed each of these debts as a corresponding line item in his monthly expenses; he claimed as monthly expenses $374 for his student loans, $571 for his credit cards, and $762 for his vehicle loans.

¶4      At the February 2018 bench trial, the court heard evidence about the parties' respective monthly expenses for alimony determination purposes and, for each party, addressed each claimed line-item expense, often adjusting and ruling on the propriety of the specific line item from the bench. As relevant here, the court specifically inquired about Spencer's claimed monthly expenses for student loan debt, vehicle loans, and credit card debt.

¶5      With respect to the student loan debt, Spencer testified that the loan was for expenses associated with his bachelor's degree in information technology, which he had completed in August 2017. He explained that the loans were taken out during

the marriage, beginning in 2014, and that he would have to start paying them back within two months following the bench trial.

¶6     For the vehicle loan payments, Spencer stated that the loan payments were for two vehicles: a car, with a payment of approximately $412 per month, and a motorcycle, with a payment of about $350 per month. Spencer explained that both vehicles were marital purchases and that, while Debbie initially had the car and assumed the debt after the parties' separation, she later asked him to take on the car and the associated debt, which he agreed to do.

¶7     Finally, as to the credit card debt, Spencer testified that the balance represented basic living essentials, such as food and gasoline, and that "a lot of [the debt] was incurred" when the parties separated and he had to furnish his new home. He also explained that he had "maintained a [credit card] balance for quite a few years" due to struggles to "make ends meet" during the marriage. However, when asked by the court whether the balance had continued "from the times when [he was] married to present" or whether the amounts "were incurred after [his] separation," he responded generally that the balance had "fluctuated," but he did not provide the court further detail concerning what portion of the balance, if any, had been carried forward from the marriage.

¶8     After the bench trial, the district court entered a memorandum decision and order with respect to the pending issues (the Memorandum Decision). On the issue of alimony, the court made several findings regarding the required alimony factors. *See* Utah Code Ann. § 30-3-5(8)(a), (e) (LexisNexis 2019)[2] (setting forth the factors the court "shall consider" in determining alimony, including the "financial condition and

_____

2. Because the 2018 amendments to the relevant portions of Utah Code section 30-3-5 were stylistic, we cite the current version for convenience.

needs of the recipient spouse," the "recipient's earning capacity or ability to produce income," and "the ability of the payor spouse to provide support," and providing that a court generally should "look to the standard of living, existing at the time of separation, in determining alimony in accordance with Subsection (8)(a)").

¶9 Addressing Debbie's financial condition, needs, and earning capacity, the court found Debbie's monthly gross income to be $1,257, resulting, after deductions, in a monthly net income of $1,148. And after increasing or reducing certain enumerated expenses listed in Debbie's financial declaration, the court determined that Debbie's total adjusted expenses were $2,483 per month, which meant that she had a monthly shortfall of $1,335. *See id.* § 30-3-5(8)(a)(i)–(ii) (requiring a court determining alimony to consider the recipient spouse's "financial condition and needs" as well as "earning capacity or ability to produce income").

¶10 For Spencer, the court found his monthly gross income to be $5,680, with a net income after deductions of $4,688. Undertaking a similar adjustment to Spencer's claimed expenses, the court set his adjusted monthly expenses at $2,421. However, in reviewing and setting Spencer's monthly expenses, the court did not mention or appear to account for Spencer's student loan debt, his vehicle loan debt, or his credit card debt. Rather, subtracting Spencer's child support obligation and the adjusted monthly expenses from his net income, the court found that Spencer had an "income of $1,170" per month with which to provide alimony. *See id.* § 30-3-5(8)(a)(iii) (considering the "ability of the payor spouse to provide support" in determining alimony). On this basis, the court determined that Spencer should pay alimony to Debbie in the amount of $1,000 per month for thirteen years, "the time period the parties were married and lived together."

¶11 Following the entry of the Memorandum Decision, pursuant to rules 59 and 60 of the Utah Rules of Civil Procedure,

Spencer moved the court for a new trial and relief from the decision. He argued that the $1,000 monthly award to Debbie was "excessive" and that the court's calculations with respect to his monthly expenses in particular "cannot be duplicated." He also pointed out that the court failed to address his vehicle loan and credit card debts in its decision.[3]

¶12    The court denied the motion, issuing a supplemental decision (the Supplemental Decision). The court explained that it "correctly assessed the parties' needs given the evidence before it" and that it had "appropriately based its decision on the marital standard of living." With respect to the credit card debt, the court observed that the debt was alleged by Spencer "to have been incurred for family expenses," concluding that "including this payment in assessing [Spencer's] need would double count the expenses" and that inclusion "would be appropriate only if corresponding expenses were deducted." As to the vehicle loan debt, the court concluded, without further explanation, that "exclusion reflects the proper determination of the marital standard of living and the vehicle needs of the parties."

¶13    In October 2018, the court issued the decree of divorce, accompanied by findings of fact and conclusions of law that, on the issues pertinent to this appeal, largely repeated the findings and determinations it had made in both the Memorandum Decision and the Supplemental Decision. The court generally noted that during the marriage the parties "lived in a home they owned" and "had money for vehicle maintenance and gas, clothing, laundry, auto insurance, utilities, internet, health insurance, entertainment and gifts." *See id.* § 30-3-5(8)(e). And the court made the same determinations as to the parties' respective monthly incomes and expenses as it had before. It also repeated its determination that Spencer would not be "given credit for credit card payments because he incurred these debts

---

3. In his rule 59 and 60 motion, Spencer did not mention the student loans.

for family expenses and to include them would double count his expenses." And addressing the student loan and the vehicle loan payments, the court stated that Spencer would not be "given credit" for them "because the amount he listed on his Financial Declaration does not reflect the marital standard of living."

¶14    Spencer appeals.

ISSUES AND STANDARDS OF REVIEW

¶15    Spencer argues that the district court exceeded its discretion when, in determining his alimony obligation, it disallowed a monthly expense for his student loan payments, his vehicle loan payments, and his credit card debt. "We will uphold a trial court's alimony determination on appeal unless a clear and prejudicial abuse of discretion is demonstrated." *Taft v. Taft*, 2016 UT App 135, ¶ 14, 379 P.3d 890 (cleaned up); *see also Dobson v. Dobson*, 2012 UT App 373, ¶ 7, 294 P.3d 591 ("We review a trial court's award of alimony for an abuse of discretion and will not disturb a trial court's ruling on alimony as long as the court exercises its discretion within the bounds and under the standards we have set and has supported its decision with adequate findings and conclusions." (cleaned up)). In setting alimony, a district court exceeds its discretion if it fails to consider the statutory alimony factors set forth in Utah Code section 30-3-5(8)(a) or if the decision otherwise lacks a reasonable basis. *See Osborne v. Osborne*, 2016 UT App 29, ¶ 25, 367 P.3d 1036.

¶16    Additionally, the "district court must make adequate findings on all material issues of alimony to reveal the reasoning followed in making the award." *Eberhard v. Eberhard*, 2019 UT App 114, ¶ 5, 449 P.3d 202 (cleaned up). "Findings of fact are adequate to support the district court's financial determinations only when they are sufficiently detailed to disclose the steps by which the district court reached its ultimate conclusion on each issue, and follow logically from, and are supported by, the

evidence." *Paulsen v. Paulsen*, 2018 UT App 22, ¶ 17, 414 P.3d 1023 (cleaned up); *accord Taft*, 2016 UT App 135, ¶ 14. We cannot affirm the district court's alimony determination when it "fail[s] to enter specific, detailed findings supporting its financial determinations." *Rayner v. Rayner*, 2013 UT App 269, ¶ 4, 316 P.3d 455 (cleaned up); *see also Oldroyd v. Oldroyd*, 2017 UT App 45, ¶ 5, 397 P.3d 645 ("The district court abuses [its] discretion when it fails to enter findings of fact adequate to support its financial determinations.").

## ANALYSIS

¶17 Spencer challenges the district court's alimony determination, specifically its decision to disallow as monthly expenses payments for student loan debt, vehicle loan debt, and credit card debt. He contends that the court's findings do not sufficiently support the alimony award and that the failure to allow a monthly expense for these debts in considering his ability to provide alimony constituted an abuse of discretion. On this basis, he asks that we vacate the alimony award.

¶18 As to the expenses associated with Spencer's student loans and the debt for at least one of his vehicles, we conclude that the evidence does not support the court's determination that those expenses did not reflect the marital standard of living. However, we conclude that the district court's decision with respect to the credit card debt was proper in light of the evidence presented on that issue during trial. Thus, we affirm in part, reverse in part, vacate the alimony award, and remand for reconsideration of alimony.

### I. Alimony Principles

¶19 Before addressing Spencer's specific challenges to the alimony award, we begin by setting out the applicable principles governing the determination of alimony.

¶20 Alimony awards are generally aimed at "enabling the receiving spouse to maintain, as nearly as possible, the standard of living enjoyed during the marriage, and preventing the receiving spouse from becoming a public charge." *Anderson v. Anderson*, 2018 UT App 19, ¶ 29, 414 P.3d 1069 (cleaned up); *see also Rule v. Rule*, 2017 UT App 137, ¶ 14, 402 P.3d 153. To that end, in crafting an alimony award, a court must consider several factors, including the "financial condition and needs of the recipient spouse," "the recipient's earning capacity or ability to produce income," and "the ability of the payor spouse to provide support." Utah Code Ann. § 30-3-5(8)(a)(i)–(iii) (LexisNexis 2019); *accord Jones v. Jones*, 700 P.2d 1072, 1075 (Utah 1985); *Barrani v. Barrani*, 2014 UT App 204, ¶ 21, 334 P.3d 994. In assessing the parties' needs and their respective abilities to fulfill those needs, courts generally should look to the standard of living established during the marriage. *See Rule*, 2017 UT App 137, ¶ 15; *see also* Utah Code Ann. § 30-3-5(8)(e) (instructing courts to, as a general rule, "look to the standard of living, existing at the time of separation," in setting alimony awards).

¶21 To assist district courts in fashioning alimony awards, this court has described the proper process for setting alimony. First, the court must "assess the needs of the parties, in light of their marital standard of living." *Dobson v. Dobson*, 2012 UT App 373, ¶ 22, 294 P.3d 591. Next, the court must determine whether the receiving spouse is "able to meet her own needs with her own income." *Id.* If the court finds that the receiving spouse is "unable to meet her own needs with her own income," the court must then assess whether the payor spouse's "income, after meeting his needs, is sufficient to make up some or all of the shortfall between [the receiving spouse's] needs and income." *Id.*; *see also* Utah Code Ann. § 30-3-5(8)(a)(iii) (directing that, as part of the court's alimony determination, it "shall consider . . . the ability of the payor spouse to provide support"); *Rule*, 2017 UT App 137, ¶¶ 19–20.

¶22 After undertaking this analysis, it may be that the parties' combined incomes are simply insufficient to meet both parties'

needs as set by the marital standard of living. In such circumstances, and only *after* adequately conducting the above analysis, a court has the discretion to apportion the burden of the shortfall between the parties, "so long as the award is equitable and supported by the findings." *Rule*, 2017 UT App 137, ¶¶ 19–22; *see also Vanderzon v. Vanderzon*, 2017 UT App 150, ¶ 43, 402 P.3d 219 ("Because both the propriety of and the calculations necessary for equalization are tied to findings regarding the parties' respective needs and income, a court must conduct an adequate needs analysis to properly equalize shortfall."); *Mullins v. Mullins*, 2016 UT App 77, ¶ 10, 370 P.3d 1283.

## II. Spencer's Needs

¶23 Having set forth the applicable principles, we now turn to Spencer's specific arguments regarding (A) student loan debt, (B) vehicle loan debt, and (C) credit card debt.

### A. Student Loan Debt

¶24 Spencer argues that the court exceeded its discretion when it disallowed his student loan payments in calculating his monthly needs. We agree.

¶25 In setting the alimony award, the court determined that Debbie was unable to meet her adjusted needs—$2,483—with her own net income—$1,148. It therefore proceeded to consider whether Spencer had the ability to provide alimony after meeting his own needs.

¶26 A payor spouse's debt obligations (even those pertaining to student loans) are recognized needs fairly affecting the payor spouse's ability to provide alimony. *See Willey v. Willey*, 866 P.2d 547, 551–52 (Utah Ct. App. 1993) (instructing the court on remand that once it reallocated a marital debt, it should then "consider [the] debt when it reexamine[d] the alimony award on remand, because [the] debt has a direct bearing on" the recipient

spouse's ability to meet her own needs and the payor spouse's ability to provide alimony); *see also Connell v. Connell*, 2010 UT App 139, ¶ 12, 233 P.3d 836 ("An adequate analysis of the factor regarding ability to pay must do more than simply state the payor spouse's income. The court must also consider the payor spouse's needs and expenditures, such as housing, payment of debts, and other living expenses." (cleaned up)); *Rehn v. Rehn*, 1999 UT App 41, ¶ 10, 974 P.2d 306 (same).

¶27 The court declined to allow Spencer's student loan payments as monthly expenses because it determined that the expense amount did not reflect the marital standard of living. The court did not include additional findings with respect to the student loans or further explain its decision to disallow them. Without more, we are unable to discern the steps by which the court reached this determination, particularly where the only evidence presented at trial is that the student loans were obtained during the marriage. *See Paulsen v. Paulsen*, 2018 UT App 22, ¶ 17, 414 P.3d 1023; *Bakanowski v. Bakanowski*, 2003 UT App 357, ¶ 13, 80 P.3d 153.

¶28 In his financial declaration, Spencer included a list of his monthly expenses, and he listed $374 as the monthly expense for his student loan debt. At trial, he testified that the student loans were taken out during the marriage, that he had recently finished his bachelor's degree in information technology, that his total student loan debt associated with his degree was "around $36,000," and that the loan payments were due to start within the next two months. Debbie offered no evidence refuting Spencer's testimony on these points.

¶29 Based on this evidence, Spencer's student loan payments seem to be an expense consistent with the marital standard of living. The evidence demonstrated that the parties' marital standard of living included incurring debt to pay for education, even if repayment of that debt had been temporarily deferred. *See Rule v. Rule*, 2017 UT App 137, ¶ 15, 402 P.3d 153 (explaining the general rule that "alimony should be based upon the

standard of living the parties established during the marriage," which "requires a court to determine the parties' needs and expenses as an initial matter in light of the marital standard of living rather than, for example, actual costs being incurred at the time of trial").

¶30 Further, Spencer was assigned responsibility for the entire student loan debt, which, given its size, would affect Spencer's ability to provide alimony for a number of years. He explained that within two months of the trial he would be required to begin making monthly payments of $374 on the debt. And there was no suggestion from the court during the trial or in its findings that it did not consider Spencer's account of the debt to be credible. Indeed, there was no evidence before the court suggesting that the loan obligation was not legitimate or that Spencer would *not* be required to shortly begin repaying it on a monthly basis for a considerable period of time. *See Anderson v. Anderson*, 2018 UT App 19, ¶ 32, 414 P.3d 1069 (explaining that anticipated monthly expenses are proper to factor into an alimony needs analysis where they reflect the standard of living established during the marriage); *Willey*, 866 P.2d at 551–52 (concluding that the trial court should consider a marital debt when it reexamined alimony, as it had "direct bearing" on the parties' needs and resources).

¶31 Thus, the evidence before the court suggested that Spencer's student loan debt was a legitimate obligation—one incurred during the parties' marriage—that, within two months of the trial, would become a regular expense directly affecting Spencer's ability to pay alimony. Without more we are unable to trace the steps through which the court determined that the impending student loan payments were not expenses based on the marital standard of living. *See Paulsen*, 2018 UT App 22, ¶ 17; *Oldroyd v. Oldroyd*, 2017 UT App 45, ¶ 11, 397 P.3d 645 (vacating the district court's ruling with respect to a property division where this court was unable to trace the steps through which the district court reached its conclusion). We therefore reverse the court's ruling on this issue, remanding to provide the court the

opportunity to reconsider its decision to disallow the expense in light of the preceding discussion and to enter adequate findings supporting the ruling it makes.

B.     Vehicle Loan Debt

¶32    Spencer next argues that the court exceeded its discretion when it disallowed two vehicle loan payments as monthly expenses affecting his ability to provide alimony. For similar reasons as those discussed with respect to Spencer's student loan payments, we conclude that the court exceeded its discretion in disallowing both of the vehicle loan payments as a monthly expense affecting Spencer's needs and his ability to provide alimony.

¶33    The court determined that, like the student loan payments, the vehicle loan payment amounts did "not reflect the marital standard of living" and the "vehicle needs of the parties." The court provided no other findings or further explanation supporting this determination.

¶34    Without more explanation from the court, its determination on this issue is difficult to reconcile with the evidence presented at trial—at least as to the allowance of a monthly expense for one of the vehicle loan payments. The evidence presented at trial suggested that the vehicles were purchased during the marriage through loans. In his financial declaration, Spencer included a line item of $762 for monthly car loan expenses, and at trial, Spencer testified that the listed amount represented a combined total for a monthly car loan payment and a monthly motorcycle loan payment—about $412 for the car and about $350 for the motorcycle. He also stated that both vehicles were purchased during the marriage through loans, with Debbie specifically acknowledging that she was obligated on the car debt.

¶35    Further, the evidence suggested that it was typical during the marriage for each party to make use of one of the two

vehicles. For example, at the time of their separation, each party assumed possession of (and the associated debt on) one of the two vehicles for their separate use. Indeed, as to the car specifically, Spencer explained that when the parties initially separated, Debbie had possession of the car and had assumed the debt (while he retained the motorcycle), but that Debbie later asked him to take the car and the debt, which he agreed to do. And Debbie did not provide evidence otherwise drawing Spencer's testimony on these points into question. In other words, all the evidence presented on this issue reasonably suggested that the parties' marital standard of living included each party having use of at least one of the two vehicles during the marriage, both of which were subject to associated loan obligations incurred during the marriage. *See Anderson v. Anderson*, 2018 UT App 19, ¶ 32, 414 P.3d 1069 (concluding the court properly included a car loan payment in the receiving spouse's needs where the evidence established that during the marriage the parties' basic needs included a car for the receiving spouse). And there is no indication in the court's findings that it disbelieved the parties' testimony about vehicle use, or the legitimacy or the amount of the debt on either vehicle.

¶36 Moreover, as with the student loan debt, Spencer was assigned the vehicle loan debt. And as explained, all else being equal, marital debts generally constitute legitimate expenses affecting a payor spouse's needs and ability to provide alimony to the receiving spouse. *See Connell v. Connell*, 2010 UT App 139, ¶ 12, 233 P.3d 836 ("An adequate analysis of the factor regarding ability to pay must do more than simply state the payor spouse's income. The court must also consider the payor spouse's needs and expenditures, such as housing, payment of debts, and other living expenses." (cleaned up)); *Willey v. Willey*, 866 P.2d 547, 551–52 (Utah Ct. App. 1993) (explaining that allocated marital debts should be included in assessments of the parties' needs and abilities to provide alimony).

¶37 Thus, as with the student loan debt, without additional explanation, we are unable to sustain the court's decision to

disallow both vehicle loan payments from Spencer's monthly expenses. *See Paulsen v. Paulsen*, 2018 UT App 22, ¶ 17, 414 P.3d 1023. As a result, we reverse the court's ruling on this issue and remand for reconsideration and entry of adequate findings.

C.    Credit Card Debt

¶38    Finally, Spencer argues that the court exceeded its discretion by failing to include his credit card debt in its alimony calculations, claiming that it was reasonably incurred debt "calculated upon the standard of living enjoyed during the marriage." In this instance, we disagree. As explained below, Spencer's testimony on this issue was equivocal at best and ultimately failed to provide the court a reasonable basis to conclude the debt should have been included as a separate monthly expense. Accordingly, we affirm the court's decision on this point.

¶39    In his financial declaration, Spencer listed a monthly expense of $571 for credit card debt. During the hearing, the court questioned Spencer about that debt. Spencer informed the court that he carried a total credit card balance of about $4,700. The court asked Spencer "[w]hat kind of items" he put on his credit card. Spencer responded that he put items like food and gasoline on it, but explained that "a lot of [the debt] was incurred" for replacement household items when the parties separated. The court noted that expenses for food and gasoline were already listed as separate monthly expenses in Spencer's financial declaration, and it asked Spencer whether his total credit card balance had "continued all the way from the times when you were married to present" or whether his "credit card bills ever reduced down and these amounts were incurred after your separation and you've just been carrying the balance." Spencer responded that he thought he had "maintained a balance for quite a few years" but that his balance had "fluctuated." When pressed by the court to identify what portion of his present balance he had been carrying since the marriage, rather than provide the court a

definite (or an approximate) number, Spencer responded in general terms, stating that "the whole time [the parties] were married [they] struggled to make ends meet." Ultimately, the court disallowed a monthly expense for the credit card debt because it determined that Spencer had "incurred these debts for family expenses and to include them would double count his expenses."

¶40 The court did not exceed its discretion in declining to include the credit card debt as a monthly expense in its assessment of Spencer's needs and ability to provide alimony. While Spencer included the $571 monthly payment as a line-item expense, he did not provide the court with a reasonable basis from which to determine whether the claimed monthly expense (or the debt underlying it) represented needs distinct from those already accounted for (such as food or gasoline), or whether it represented a purely marital debt Spencer had assumed and carried forward. Indeed, when asked at trial to clarify what portion of the balance he had been carrying from the time of the marriage (as opposed to that representing Spencer's other expenses), Spencer was unable to do so and instead only generally responded that the parties had struggled to make ends meet during the marriage and that the credit card balance had "fluctuated" through the years. *See Taft v. Taft*, 2016 UT App 135, ¶¶ 16–26, 379 P.3d 890 (concluding that the trial court's determination with respect to the payor spouse's financial resources was not error where the evidence at trial "largely left [the court] to its own resources to untangle complex financial issues," explaining that in such circumstances "the presumption of validity we afford to a trial court when it adjusts the financial interests of parties to a divorce is at its most robust"). Further, Spencer himself conceded that some of the expenses underlying the anticipated ongoing debt included items such as food and gasoline—expenses which, as the court noted, had already been accounted for in Spencer's monthly expenses.

¶41 Stated another way, Spencer's testimony with respect to the credit card debt fairly suggested to the court that, rather than

representing an expense reasonably incurred during the marriage, the debt was instead the product of a mechanism used to pay various expenses both during and after the marriage, including those (as Spencer conceded) already accounted for in the court's needs analysis. *See Barrani v. Barrani*, 2014 UT App 204, ¶ 27, 334 P.3d 994. In these circumstances, where the evidence before the court did not provide a reasonable basis to conclude that the debt was a marital debt apart from needs already factored in, the court acted within its discretion by declining to include the debt as a separate monthly expense in its evaluation of Spencer's ongoing needs and ability to pay alimony.[4]

---

4. Spencer also generally contends on appeal that the court's alimony award does not follow logically from the evidence. Our review of the court's findings suggests that some of the court's alimony calculations are difficult to reconcile with its stated findings. For example, while the court found that Spencer's adjusted needs were $2,421, that figure does not appear to add up when all of the court's stated adjustments to Spencer's claimed needs are included in the calculations. In any event, because we have determined that the court exceeded its discretion in disallowing the student loan and both of the vehicle loan payments as monthly expenses, the court will be required to reconsider its alimony determinations and make additional findings supporting its ultimate award. In doing so, on remand the court should reassess and recalculate Spencer's needs and generally "conduct an appropriate [alimony] reanalysis, which may include consideration of income equalization if, in the end, [Spencer's] and [Debbie's] expenses ultimately exceed the available income." *See Barrani v. Barrani*, 2014 UT App 204, ¶ 30, 334 P.3d 994; *see also Allred v. Allred*, 797 P.2d 1108, 1112 (Utah Ct. App. 1990) ("We do not intend our remand to be merely an exercise in bolstering and supporting the conclusion already reached.").

CONCLUSION

¶42 We conclude that the district court was within its discretion in declining to include the credit card debt as part of Spencer's monthly needs. Nevertheless, because the basis for the court's disallowance of the student loan and both vehicle loan payments is not apparent from the evidence or the court's findings, we conclude that the court exceeded its discretion in excluding them from its assessment of Spencer's monthly needs. Accordingly, we reverse the court's ruling on those two issues, vacate the alimony award, and remand to the district court to reevaluate its alimony determinations and award consistent with this opinion.[5]

───────────

───────────

5. Debbie requests attorney fees and costs under rule 33 of the Utah Rules of Appellate Procedure. Rule 33 permits an appellate court to award "just damages, which may include . . . reasonable attorney fees, to the prevailing party" when it determines that the appeal taken was "frivolous or for delay." Utah R. App. P. 33(a). Damage awards under rule 33 are reserved for only "egregious cases." *Porenta v. Porenta*, 2017 UT 78, ¶ 51, 416 P.3d 487 (cleaned up). Spencer has partially prevailed, and his appeal therefore does not present a frivolous case. Accordingly, we reject Debbie's request.